Vincent TURNQUIST,
Plaintiff-Appellant,

v.

Ivan ELLIOTT, Leon Davis, Robert J. Lenz, Nina T. Shepard, Eleanor Suggs, and Arthur Velasquez, individually and as members or former members of the University Civil Service Merit Board; The University Civil Service Merit Board, a body corporate and politic; The University Civil Service System of Illinois, a body corporate and politic, Defendants-Appellees.

No. 82-1851.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 18, 1983.

Decided May 18, 1983.

John H. Bisbee, Bisbee & Nagan, Macomb, Ill., for plaintiff-appellant.

Richard O. Erdmann, Follmer, West & Erdmann, Champaign, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and PELL and POSNER, Circuit Judges.

PELL, Circuit Judge.

Vincent Turnquist appeals from the district court's order granting the appellees' motion for summary judgment. He contends that the court erroneously concluded that he had no property interest under Illinois law in being paid the prevailing rate of wages for his class of employment. He further contends that, contrary to the court's holding, he was not accorded due process by the state agency that ruled upon his claim of entitlement to payment of the prevailing rate.

## I. FACTS

Western Illinois University employed Vincent Turnquist as a mail messenger from October 25, 1971, through January 20, 1981. The University Civil Service System Act, Ill.Rev.Stat. ch. 24½, § 38b1–38v (1981), governs the employment of all non-academic employees of Western Illinois University, including that of the appellant. Under section 38b3(3), the University Civil Service Merit Board (the Board) "shall direct the payment of 'the prevailing rate of wages' in those classifications in which, on January 1, 1952, any employer is paying such prevailing rate and in such other classes as the Merit Board may thereafter determine."

Beginning in July 1974, Turnquist sought to establish that he was entitled to be paid at the same rate as city carriers of the United States Postal Service. On March 11, 1975, the Civil Service Employment Policies Committee of Western Illinois University denied his request that mail messengers be paid the same rate as city carriers. Turnquist appealed this ruling to Walter Ingerski, the director of the University Civil Service System.

In letters to Turnquist dated May 14 and May 26, 1975, Ingerski denied his appeal, stating that there were substantial differences between the duties of mail messengers and city carriers, which justified the difference in pay rates. On June 6, 1975,

Turnquist appealed this ruling to the Merit Board, which considered his appeal on August 19, 1975. The appellant was not present at the meeting and was not notified in advance that the meeting was to take place. Ingerski, who was not a member of the Board, appeared at the meeting and outlined the differences between the jobs of mail messengers and city carriers. The Board notified Turnquist of its decision to affirm Ingerski's ruling in a letter dated August 21, 1975.

On February 18, 1976, the appellant requested that the Board reconsider its action; the Board denied the request on February 26. On August 19, 1980, Turnquist filed a complaint under 42 U.S.C. § 1983, asserting that the Board had denied him his procedural due process rights by not granting him a proper hearing on his claim that he was entitled to be paid the prevailing rate of wages.

On August 28, 1981, the appellees filed a motion for summary judgment. United States Magistrate Charles H. Evans filed recommendations in which he concluded that Turnquist did have a protected property interest but said that the Board provided him with sufficient due process. On April 23, 1982, the district court adopted the Magistrate's recommendation that the appellees' motion for summary judgment be granted, but held that Turnquist had no property interest. This appeal was filed on May 17, 1982.

## II. THE INTEREST INVOLVED

Determining whether there has been an unlawful deprivation of a constitutionally protected property interest is a two-part inquiry. First, the court must establish whether there is a property interest. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709,

33 L.Ed.2d 548 (1972). A property interest can be created expressly· or may arise through implication from a state agency's words, actions, rules, or "mutually explicit understandings." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Second, if there is such an interest, the court must determine whether the person deprived was accorded due process.

The district court held that Ill.Rev.Stat. ch. 24½, § 38b3(3) (1981), on which Turnquist relies in claiming an entitlement, did not confer a property interest in being paid the· prevailing rate of wages. The court cited the statute's provision that the Board "shall direct the payment of 'the prevailing rate of wages' in those classifications in which, on January 1, 1952, any employer is paying such prevailing rate and in such other classes as the Merit Board *may* thereafter determine" (emphasis added).[1] The court interpreted this language to mean that the Board has discretion to determine which classifications are to be paid the prevailing rate of wages after January 1, 1952.

The appellant first objects to the district court's holding that the statute gives the Board discretion to determine which classifications are to be paid the prevailing rate. He says that the court cited no case authority or principles of statutory construction for its interpretation.

Second, Turnquist argues that, even assuming that the statute does not of its own force require payment of the prevailing rate to mail messengers, the Board was estopped from disputing his interpretation that the statute did require payment of the prevailing rate. He contends that in his letters to Walter Ingerski, the director of the University Civil Service System, he expressed his view that the statute mandated payment of the prevailing rate. Ingerski never disputed the appellant's interpretation;· rather, Ingerski acquiesced in it by devoting his responses solely to whether there was comparability between the appellant's job and Postal Service city carriers, concluding that there was not. By accepting Turnquist's interpretation, the appellant says, Ingerski committed the Board to recognize that the mail messenger ·group was covered by the statute if the work was comparable to that of city carriers.

We agree with the district court that Turnquist had no property interest in being paid the prevailing rate of wages. ·Even accepting the appellant's contention that Ingerski agreed with his interpretation of the statute—as we must in a case reviewing the grant of a motion for summary judgment—Turnquist at most had a unilateral expectation of being paid the prevailing rate.

◼ We begin by discussing Turnquist's objection to the district court's interpreta-· tion of Ill.Rev.Stat. ch. 24½, § 38b3(3) (1981). The statute provides that the Board "shall direct the payment of 'the prevailing

1. Ill.Rev.Stat. ch. 24½, § 38b3(3) (1981) provides:

> The Merit Board shall have the power and duty—
>
> . . . .
>
> (3) To prescribe the range of compensation for each class or to fix a single rate of compensation for employees in a particular class; and to establish other conditions of employment which an employer and employee representatives have agreed upon as fair and equitable. The Merit Board shall direct the payment of the "prevailing rate of wages" in those classifications in which, on January 1, 1952, any employer is paying such prevailing rate and in such other classes as the Merit Board may thereafter determine. "Prevailing

rate of wages" as used herein shall be the wages paid generally in the locality in which the work is being performed to employees engaged in work of a similar character. Each employer covered by the University System shall be authorized to negotiate with representatives of employees to determine appropriate ranges or rates of compensation or other conditions of employment and may recommend to the Merit Board for establishment the rates or ranges or other conditions of employment which the employer and employee representatives have agreed upon as fair and equitable. Any rates or ranges. established prior to January 1, 1952, and hereafter, shall not be changed except in accordance with the procedureś herein provided.

rate of wages' ... in such other classes as the Merit Board may ... determine." Although there are no Illinois cases interpreting this language, we agree that the statute gives the Board the discretion to direct that certain classes of employment be paid the prevailing rate. This is the evident effect of the phrase "as the Merit Board *may* ... determine." The appellant faults the district court for interpreting the statute in this way, but he suggests no other interpretation of the statutory language.

The effect of the statute is to give the Board discretion; it does not require the Board to direct that certain classes be paid the prevailing rate. Turnquist does not contend that, prior to filing his claim in 1974, the Board directed that mail messengers be paid the prevailing rate for city carriers. Thus, when the appellant began to request payment of the prevailing rate, he had no property interest and accordingly had not been deprived of one. He had a mere expectation of being paid the prevailing rate, based on his mistaken belief that the statute required that payment of the prevailing rate be made if the two jobs were comparable.

Concerning the appellant's contention that a property interest sprang into existence after he began pressing his claim, we do not agree that the actions of Ingerski or the Board created an implied contract to pay mail messengers the prevailing rate of wages. No one ever promised to pay him the prevailing rate or suggested that he should be paid at that rate. Although Ingerski acquiesced in Turnquist's misinterpretation of the statute, the appellant was not thereby prejudiced; Ingerski's conclusion was the same as it would have been if he had correctly interpreted the statute: mail messengers were not entitled to be paid the prevailing rate. Unlike the situation in *Perry v. Sindermann,* 408 U.S. 593, 600, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), neither Ingerski nor the Board said anything to Turnquist that would arguably justify detrimental reliance.[2] Hence the appellant had nothing more than a unilateral expectation of an entitlement.

The consequences of holding that Ingerski, an employee of the Board, could bind the Board to an incorrect interpretation of a statute where Turnquist was in no way prejudiced would be unacceptable from the standpoint of administrative law policy. Such a rule would mean that a person with no property interest in a benefit could gain one by initiating meritless proceedings and then waiting for an agency employee to acquiesce in his mistaken interpretation of the governing law, even if the employee did not promise the claimant a benefit and without regard to how the agency itself would interpret that law.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.[3]

---

2. For example, Turnquist might have been able to establish reliance if a state agent with authority to do so had promised him that he would be paid the prevailing rate. Similarly, he might have had a claim for the deprivation of a property interest if the Board had directed that mail messengers be paid the prevailing rate but then had refused to listen to Turnquist's claim that the order was not being complied with. This case has none of the elements of those hypothetical situations, however.

3. In light of our holding that the appellant had no property interest in being paid the prevailing rate of wages, we do not reach his contention that the Board failed to accord him sufficient due process in ruling upon his claim.