Donald GREEN, Plaintiff-Appellant,

v.

BOARD OF SCHOOL COMMISSIONERS of the CITY OF INDIANAPOLIS, et al., Defendants-Appellees.

No. 83–1111.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1983.

Decided Sept. 15, 1983.

Patricia Smith, Legal Services Organization of Ind., Inc., Indianapolis, Ind., for plaintiff-appellant.

Michael A. Blickman, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and DUMBAULD, Senior District Judge.*

PER CURIAM.

Plaintiff Donald Green is a former school bus driver. He was employed by the Board of School Commissioners of the City of Indianapolis ("the School Board") to drive children between the ages of six and fourteen years to and from public schools in Indianapolis. Two months before his one-year employment contract was to expire, the School Board dismissed Green for harassing some of the girls who rode his bus to and from school. The harassment involved sexual misconduct. Green was charged with having made "suggestive, lewd, and/or sexual advances, both verbal and physical, to female pupil passengers on [his] bus by various acts of touching, grabbing, hugging, and kissing, and lying on said female pupil passengers and of [having made] suggestive, lewd, and threatening statements to said female pupil passengers." The School Board held a hearing to afford Green an opportunity to contest these charges and shortly thereafter decided to dismiss him. Green is now before us claiming that the hearing he received was constitutionally inadequate. He filed suit against the School Board and its members for monetary, declaratory, and injunctive relief. The district court granted summary judgment in favor of defendants and Green has appealed. For the reasons that follow, we affirm.

■ Green was constitutionally entitled to a hearing only if the School Board deprived him of liberty or property when it dismissed him. Green claims he was deprived of both, but it may be that he was deprived of neither. There is reason to doubt whether the Fourteenth Amendment was intended to allow every person with a breach of contract claim against a state to bring that claim in federal Court (see *McCormick v. Oklahoma City,* 236 U.S. 657, 35 S.Ct. 455, 59 L.Ed. 771; *Coyne-Delany Co. v. Capital Development Bd. of State of Ill.,* 616 F.2d 341, 343 (7th Cir.1980). It may be necessary also that the employee manifest to the state reasonable reliance on the state's performance of its contract. See *Smith v. Board of Education,* 708 F.2d 258, 263 (7th Cir.1983); *Vail v. Board of Education,* 706 F.2d 1435, 1440 (7th Cir.1983). Thus the only property right Green has because of his employment contract may be the right to sue in state court for breach of contract. Green's liberty includes his interest in associating with members of his community and in being employed, *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, and the charges against him might be serious enough to threaten these interests if word of them was leaked to the public—although some

* The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

employers such as construction companies with jobs not involving daily contact with young girls might not care much about the charges. But the School Board has not made public its reasons for dismissing Green. The hearing was closed to the public and the School Board will release information in its files pertinent to Green's dismissal only if Green authorizes it to do so. Green argues that no employer will hire him without first reviewing his School Board file, so that in reality he will be required to authorize the release of this information each time he applies for a job. But Green concededly can control the kind and amount of information that is released, and the rules Green was charged with having violated do not mention sexual harassment of school children. See Appendix hereto. Therefore there is no reason why potential employers will learn about the sordid details of how he violated the regulations. Compare *Velger v. Cawley,* 525 F.2d 334 (2d Cir.1975), reversed, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92.

Even assuming that the School Board did deprive Green of his liberty to seek other employment and his property right in driving the School Board's buses, his dismissal was not unconstitutional because the hearing he received was adequate to protect those interests. The Board informed him of the charges against him and gave him an opportunity to prove those charges false. Green complains that the opportunity was inadequate because he was not given a chance to attack the credibility of the children who had accused him of the various acts charged. The charges were based upon the handwritten statements of ten different children who regularly rode Green's bus. Green was permitted to see those statements, but the identity of the children was kept secret from him and the children did not testify at the hearing.

■ The School Board had good reason to keep the identity of the children secret. They were frightened of Green and by the thought of having to recount to a roomful of strangers the occasions when Green had grabbed or touched their breasts and legs or attempted to lie on top of them in the back of his bus. There is no chance that all the children fabricated their stories for fun or because they disliked Green because each child gave her statement to a police investigator employed by the School Board and was interviewed individually to avoid the risk of collusion. Also each recorded her story in her own words. The statements reflect this: the same phrases and stories do not reappear in each. And each child's statement was signed by one of her parents who reviewed it in the presence of the child and the investigator. These procedures adequately protected Green against any risk that the children were out to get him. Green concedes that he often "clowned around" with girls on his bus. Maybe Green's intentions when he touched these girls were not as bad as the girls believed. That, however, is beside the point. Green was charged with having made "suggestive, lewd, and/or sexual advances," not with attempted rape. It is enough that the conduct charged occurred and that at least ten different children found it offensive.

Judgment affirmed.

## APPENDIX

### NOTICE OF HEARING BEFORE THE BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF INDIANAPOLIS

You are hereby notified that the Board of School Commissioners of the City of Indianapolis will meet to consider the recommendation of the General Superintendent that you be discharged from your employment as a Bus Driver with the Indianapolis Public Schools for alleged violations of the terms and conditions of your employment, to wit:

1. Violation of Paragraph 8 of the School Bus Driver's Employment Contract—"Driver . . . shall use every care for the safety of the children."

2. Violation of Paragraph 7 of the School Bus Driver's Employment Contract, which incorporates by ref-

erence "the provisions of all Indiana Statutes, and rules and regulations of the State School Bus Committee pertaining to ... the transportation of school children...."

3. Violation of the Indiana State Police School Bus Regulations and Rules for Safety to Be Observed by School Bus Drivers and Pupil Passengers—Recommended Rules for Pupil Safety: "The driver ... shall treat all the children in a civil manner, see that no child is imposed upon or mistreated while in his charge, and shall use every care for the safety of the children under his charge."

4. Violation of the Indiana State Police School Bus Regulations and Rules for Safety to Be Observed By School Bus Drivers and Pupil Passengers—Recommended Rules for Pupil Safety, Subparts (c) and (d): "Loud, boisterous or profane language or indecent conduct shall not be tolerated...." and "Pupils shall not be allowed to tease, scuffle, trip, hold, hit, or use their hands or feet or body in any objectionable manner."

5. Violation of I.C. (1971) 20–9.1–3–1 which states that "a person may not drive a school bus for the transportation of school children unless (a) he is of good moral character."

You have been charged with improper conduct in the performance of your duties under the above-stated provisions of your contract, the applicable rules and regulations, and the applicable statutes through the following actions:

During the period September 4, 1979 through January 30, 1980, you did make suggestive, lewd, and/or sexual advances, both verbal and physical, to various female pupil passengers on your bus by various acts of touching, grabbing, hugging, and kissing, and lying on said female pupil passengers and of making suggestive, lewd, and threatening statements to said female pupil passengers, any one of which acts with respect to any one of which female pupil passengers constitutes

grounds for dismissal under the authority of I.C. (1971) 9–4–1–124 and I.C.′ (1971) 20–9.1–3–1.

Furthermore, during the course of the grievance steps, you were fully apprised and informed of the particular allegations made by various female pupil passengers in written notarized statements submitted to the IPS administration by said female pupil passengers in that portions of said statements were read to you.

You are further notified that the Board of School Commissioners of the City of Indianapolis will meet and hold a hearing upon the matter of your recommended discharge at      p.m., April 1, 1980, in the Board Room of the Education Center, 120 E. Walnut Street, Indianapolis, Indiana; that, at said hearing, you have the right to a full statement of the reasons for the proposed discharge, the right to be heard, and the right to present testimony of witnesses and other evidence bearing upon the reasons for the proposed discharge.