John BROWN, et al.,
Plaintiffs-Appellants,

v.

Steve BRIENEN, et al.,
Defendants-Appellees.

No. 82–2995.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1983.

Decided Dec. 8, 1983.

**362**

John A. Beyer, Satter, Ewing & Beyer, Pontiac, Ill., for plaintiffs-appellants.

John R. Bailen, Bane, Allison, Saint & Ehlers, Bloomington, Ill., for defendants-appellees.

Before POSNER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.[*]

POSNER, Circuit Judge.

State employees' suits under section 1 of the Civil Rights Act of 1871 (now 42 U.S.C. § 1983) alleging breach of an employment contract have become an important part of the business of the federal courts. In recent months this court has decided seven such cases (excluding cases decided by unpublished order): *Turnquist v. Elliott,* 706 F.2d 809 (7th Cir.1983); *Vail v. Board of Educ.,* 706 F.2d 1435 (7th Cir.1983); *Lyznicki v. Board of Educ.,* 707 F.2d 949 (7th Cir.1983); *Smith v. Board of Educ.,* 708 F.2d 258 (7th Cir.1983); *Grimes v. Eastern Illinois Univ.,* 710 F.2d 386 (7th Cir.1983); *Hadley v. County of DuPage,* 715 F.2d 1238 (7th Cir.1983); and *Green v. Board of School Comm'rs,* 716 F.2d 1191 (7th Cir. 1983) (per curiam). The specific question for decision in this case is whether such a breach is actionable under section 1983 even though the employee has not been fired and even though he could litigate the alleged breach in state court under state law.

The board of McLean County, Illinois enacted an ordinance which provided that county employees who work more than a certain number of hours per week "may be granted time off in an amount equal to the overtime worked." The sheriff announced that, as authorized by the ordinance, he would grant compensatory time off to employees in his department who worked overtime. But because the department's workload grew and the board failed to appropriate money to hire additional employees, compensatory time off accrued faster than the sheriff could allow it to be taken without endangering public safety. By the time of trial the backlog was several thousand hours.

This suit pits sheriff's department employees who have accrued compensatory time off against the sheriff, the county, the board, and the board's members. The suit charges that the ordinance, in combination with the sheriff's announced intention of granting compensatory time off, conferred a property right on the employees once they put in overtime after the announcement; and that the sheriff, by refusing to allow them to take their accrued time off, and the board, by refusing to fund a staff large enough to enable the sheriff to honor his promise, deprived them of that property right without due process of law. They asked the district court to order the defendants either to grant them forthwith the time off that they had earned or to pay them their wages for that time, and for the future to grant compensatory time off promptly as it accrues. The district judge concluded, after a bench trial on liability, that there had indeed been a deprivation of property, but no denial of due process since the plaintiffs could get a fully adequate hearing by suing the defendants in state court for breach of contract; and he dismissed the complaint. 553 F.Supp. 561.

The parties agree that if the defendants broke a contract to give the plaintiffs compensatory time off, the plaintiffs can obtain the same relief that they are seeking in the present suit from a breach-of-contract suit in state court. See Ill.Rev.Stat.1981, ch. 34, ¶ 601; *Scutt v. LaSalle County Bd.,* 97 Ill. App.3d 181, 53 Ill.Dec. 21, 423 N.E.2d 213 (1981); *County of Stephenson v. Bradley & Bradley, Inc.,* 2 Ill.App.3d 421, 426, 275 N.E.2d 675, 679 (1971). This appeal thus raises acutely the question whether 42 U.S.C. § 1983 displaces the whole of the state law of public contracts into the federal courts through the characterization of a breach of such a contract as a deprivation

of property without due process of law, even though most such disputes have nothing to do with civil rights as ordinarily understood. Cf. *Eisen v. Eastman,* 421 F.2d 560, 564–65 (2d Cir.1969) (Friendly, J.).

■ Although the defendants have not appealed from the district judge's ruling that there was a deprivation of property, we may consider any ground for affirmance that the record supports. *Brown v. Marquette Savings & Loan Ass'n,* 686 F.2d 608, 611 (7th Cir.1982). The question whether there was a deprivation of property is logically prior to the question whether there was a denial of due process, and we shall address it lest we leave the impression that it is an insubstantial question.

Until comparatively recently, the line between contract and property rights, for Fourteenth Amendment as for other purposes, was clearly drawn. In *McCormick v. City of Oklahoma City,* 236 U.S. 657, 35 S.Ct. 455, 59 L.Ed. 771 (1915), for example, the Supreme Court held that a city's breach of a contract to pave its streets was not a deprivation of property. The basis of the contractor's "allegation is that complainant had binding contracts with the city which the city refused to permit him to perform. Their breach is alleged and nothing more, and the allegation gets no other quality or character by the assertion that complainant had a 'vested right of property' in the contracts or their performance, and that to take this away is a deprivation of property without due process of law." *Id.* at 659, 35 S.Ct. at 456. To similar effect see *Hartigan v. Board of Regents,* 49 W.Va. 14, 38 S.E. 698 (1901), and *Scopes v. State,* 154 Tenn. 105, ʾ112, 289 S.W. 363, 365 (1927), both dealing with employment contracts. But by the time *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), was decided, it was evident that the Supreme Court considered the common law definition of "property" too confining to achieve the objectives of the due process clause. That case involved the termination of welfare benefits, and the Court held that in the age of the welfare state such benefits are so like property in its conventional sense that they may not be cut off without due process of law. See *id.* at 262 and n. 8, 90 S.Ct. at 1017, and n. 8.

■ It is apparent in retrospect that if "property" was going to be broadened beyond its common law boundaries, the line between property and contract would fray. This was confirmed, two years after *Goldberg v. Kelly,* by *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 599, 601–02, 92 S.Ct. 2694, 2698, 2699–2700, 33 L.Ed.2d 570 (1972). The Court in *Roth* said, "To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to it. . . . Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." 408 U.S. at 577, 92 S.Ct. at 2709. By this test, Roth did not have a property interest, for he had no expectation, based on state law, of continued employment. But Sindermann was entitled to show that he had an implied promise to tenure, i.e., of permanent employment terminable only for cause; and so an interest that the common law would have classified as a contract right was treated for Fourteenth Amendment purposes as a property right. In *Hostrop v. Board of Junior College Dist. No. 515,* 471 F.2d 488, 494 (7th Cir.1972), and *Vail v. Board of Educ.,* 706 F.2d 1435 (7th Cir.1983), cert. granted, —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983), this circuit held that *Sindermann* could not be limited to tenure contracts, but extended to term contracts as well. Thus, at least in this circuit, unless and until the Supreme Court decides otherwise in *Vail,* some breaches of public employment contracts are to be considered deprivations of property within the meaning of the Fourteenth Amendment even though the contract is not, as in *Roth* and *Sindermann,* a lifetime tenure contract.

■ But in the cases where breach of contract has been equated with deprivation of property, the employee was discharged (constructively discharged, in *McAdoo v. Lane,* 564 F.Supp. 1215, 1221 (N.D.Ill.1983)).

One of our recent decisions expressly leaves open the question whether demotion of a public employee without reduction in pay is a deprivation of property, *Lyznicki v. Board of Educ., supra,* 707 F.2d at 951, and another states: "There is reason to doubt whether the Fourteenth Amendment was intended to allow every person with a breach of contract claim against a state to bring that claim in federal Court," *Green v. Board of School Comm'rs, supra,* 716 F.2d at 1192, citing the *McCormick* decision. See also *Casey v. DePetrillo,* 697 F.2d 22, 23 (1st Cir.1983) (per curiam); *Manning v. Lockhart,* 623 F.2d 536, 538 (8th Cir.1980) (per curiam). It seems, then, that there is no rule that every breach of a public employment contract is a deprivation of property within the meaning of the due process clause.

 In deciding whether a particular breach should be deemed a deprivation of property we must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts. Most common law wrongs are not actionable under section 1983, though by definition they involve the deprivation of a legally protected interest. See *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (defamation); *Wise v. Bravo,* 666 F.2d 1328, 1332–33 (10th Cir.1981) (visitation rights); *id.* at 1333–35 (assault and trespass to property); *Elbert v. Board of Educ.,* 630 F.2d 509, 512–14 (7th Cir.1980) (defamation); *White v. Thomas,* 660 F.2d 680, 684 (5th Cir.1981) (same). Only interests substantial enough to warrant the protection of federal law and federal courts are Fourteenth Amendment property interests. *Id.* at 684. Whether an interest is that substantial depends on the security with which it is held under state law and its importance to the holder. Conventional property rights illustrate security of tenure: you cannot put your car in your neighbor's garage and if he complains ask a court to balance the value of your use of the garage against his. But that is just the type of balancing process that is used to decide whether to abate pollution as a common law nuisance. See

Prosser, Handbook of the Law of Torts 580–83 (4th ed. 1971). The tort rights that nuisance law gives a landowner against a polluter do not have the solidity of common law property rights, and the interest they protect is not property under the Fourteenth Amendment. See *York v. City of Cedartown,* 648 F.2d 231, 232–33 (5th Cir. 1981) (per curiam); cf. *Barbian v. Panagis,* 694 F.2d 476, 484–86 (7th Cir.1982).

 Both security of tenure and importance to the holder of the right are illustrated by the teacher's tenure right in *Sindermann.* For most people their human capital—and in particular their earning capacity—is greater than their physical capital. And losing one's job may impair one's human capital; one may find it difficult without protracted and costly search to find an equivalent job, and may in the end have to settle for an inferior job at lower pay. Most Americans do not have the security of tenure contracts. Most do not even have term contracts but are employees at will with no job security at all. Yet they have a realistic expectation of continued employment, and the loss of that expectation through arbitrary state action can be a bitter blow. Even so, *Roth* teaches that there is no deprivation of property under the Fourteenth Amendment when the employee has no interest protected by state law in his continued employment, and he would have no such interest if he were an employee at will. But an employee fired in breach of contract has been deprived of a legally protected interest that *Hostrop* and *Vail* hold to be property under the Fourteenth Amendment.

 A breach of contract that does not terminate the employment relationship is different. A deputy sheriff asks his boss for permission to take next Friday off to do some shopping. The boss not only agrees but solemnly promises that he will let the deputy have the afternoon off. But when Friday rolls around he changes his mind. The deputy is bitterly disappointed, and conceivably he might have some administrative or even judicial remedy under state

law. But the Constitution must not be trivialized by being dragged into every personnel dispute in state and local government. Disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment. A public employer who harassed an employee in order to induce him to give up a substantive constitutional right, such as freedom of speech, would be violating the Fourteenth Amendment and section 1983. *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982). But no such right is present here. A public employer who drove an employee having a contract of employment to resign by making life unbearable for him, through excessive demands for overtime or other breaches of the employment contract, might be violating the Fourteenth Amendment and section 1983. This would be a case of constructive discharge, on which see *Bourque v. Powell Elec. Mfg. Co.,* 617 F.2d 61, 65 (5th Cir. 1980), and would be tested (at least in this circuit) under the principles of *Hostrop* and *Vail*—always provided the employee had a valid contract. See *McAdoo v. Lane, supra,* 564 F.Supp. at 1221. But no one has resigned in this case.

■ Notwithstanding our doubts that the alleged breach of contract deprived the plaintiffs of property within the meaning of the Fourteenth Amendment, we need not resolve the issue, for there was in any event no denial of due process. This conclusion is not unrelated, however, to our analysis of the property issue. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), tells us to consider three factors in deciding whether there has been a denial of due process. The first (to which our property analysis pertains) is the importance of the interest of which the plaintiff has been deprived. The others are the risk that the deprivation was erroneous because a particular procedural safeguard was not provided, and the burden to the state of providing it.

The safeguard that the plaintiffs claim they were entitled to is a hearing in advance of the sheriff's decision not to allow them to take the compensatory time off that they had accrued. The parties agree that if the plaintiffs can prove a contractual right to the time off, they can get the same remedy they are seeking in this case in a suit in state court under state law. Such a suit would be process—in fact more elaborate process than the plaintiffs would have received had the defendants given them an administrative hearing. The issue is thus whether the plaintiffs were entitled to an additional remedy, in the form of an administrative hearing before the sheriff refused to let them take their accrued time off.

■ There is no rule that a "pre-deprivation" hearing is required in every case. *Mathews* held a post-deprivation administrative hearing constitutionally adequate for cutting off disability payments, while *Ingraham v. Wright,* 430 U.S. 651, 680–82, 97 S.Ct. 1401, 1417–18, 51 L.Ed.2d 711 (1977), held that a state tort suit would provide due process to a child who had been spanked by a public school employee for a breach of discipline; a pre-spanking administrative hearing was not required. *Parratt v. Taylor,* 451 U.S. 527, 542–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981), held that the availability of state tort remedies satisfied the requirements of due process for a prisoner who complained that he had lost property because of the carelessness of prison officers. True, *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436–37, 102 S.Ct. 1148, 1158–59, 71 L.Ed.2d 265 (1982), held that a post-deprivation tort remedy did not satisfy the requirements of due process, but the remedy would not have made the plaintiff whole, unlike the present case. Recently this circuit held a post-deprivation administrative hearing constitutionally adequate in a case involving the towing of illegally parked cars, *Sutton v. City of Milwaukee,* 672 F.2d 644 (7th Cir.1982), and held post-deprivation judicial remedies constitutionally adequate in two cases involving deprivation of the custody of children. *Ellis v. Hamilton,* 669 F.2d 510 (7th Cir. 1982); *Lossman v. Pekarske,* 707 F.2d 288 (7th Cir.1983). See also *Bonner v. Coughlin,*

517 F.2d 1311, 1319 (1975), modified en banc, 545 F.2d 565 (7th Cir.1976); Bator, *Some Thoughts on Applied Federalism,* 6 Harv.J.L. & Pub. Policy 51, 56 (1982).

Cutting off one's disability benefits or taking away one's children are more serious deprivations than breaking a promise to compensate one for overtime work. The latter deprivation stands in relation to the employee's interest in his job approximately as spanking a school child (*Ingraham*) stands in relation to the child's interest in his bodily integrity. If there is a difference between this case and *Ingraham* it is that the spanking—the deprivation of liberty, as the Court found—was complete before the remedy that the Court thought constitutionally adequate could be brought into play, whereas in this case it is doubtful whether any deprivation has occurred yet. The plaintiffs' counsel remarked at argument that damages were not the only remedy that would make his clients whole; another would be to let them take their accrued time off at last. He can seek either remedy in state court, and until he has done so and been turned down it is doubtful whether his clients can be said to have suffered a deprivation, implying a finality which the mere postponement of a claimed benefit does not have. But if deprivation there was, it inflicted a loss so tenuous—a loss measured not by the value of the compensatory time off that the plaintiffs have accrued but by the difference between getting that time off as soon as, and later than, it was promised to them—that the contract law of the State of Illinois, administered fairly and reasonably as we must assume it will be, surely will give the plaintiffs all the process that is constitutionally due them.

Even if the deprivation in this case had been of a more substantial form of property and had had greater finality, it would not follow that the plaintiffs were entitled to a pre-deprivation administrative hearing in addition to their common law judicial remedy. The other elements of the *Mathews* test would have to be considered. One is the probable effect of such a hearing in reducing the risk of error. An administrative hearing would not have significantly reduced the probability of the sheriff's breaking his promise (if indeed that is what he did) to these plaintiffs. Since he could not, without violating his duty to maintain public safety, allow the plaintiffs to take their compensatory time off when they wanted to, the outcome of such a hearing would have been virtually a foregone conclusion. As an additional procedural safeguard, therefore, it would have been of little value to the plaintiffs. But it would have been costly to the public. The burden on local officials would be heavy if they had to grant a hearing every time they wanted to change any contractual term of employment of any public employee.

To summarize, the "property" of which the plaintiffs were deprived, if property it is in a Fourteenth Amendment sense (which as we have said we doubt), is far down on the scale of Fourteenth Amendment interests. In addition, the deprivation was merely a postponement. Indeed, since the plaintiffs' loss was of a kind readily compensable in monetary terms, it may even be doubted whether any deprivation in the constitutional sense has yet occurred, or will occur unless and until the state courts turn down a meritorious contract claim. And the additional procedural safeguard that the plaintiffs seek, a pre-deprivation administrative hearing, would have been burdensome to the local officials who would have had to conduct it but of little utility to the plaintiffs in inducing the sheriff to change his mind.

 It remains only to consider the plaintiffs' claim that they have been deprived of "substantive due process," as well as of due process in its primary sense of fair procedure. "Substantive due process" is a shorthand for the fact that the Supreme Court has interpreted the due process clause of the Fourteenth Amendment to confer certain substantive rights based mainly on the Bill of Rights. For example, the due process clause of the Fourteenth Amendment has been held to incorporate and thus make applicable to the states the First

Amendment. So a state may not enact a law abridging freedom of speech, no matter how many procedural safeguards it provides against applying the law erroneously. And therefore it may not break a contract with an employee in order to induce him to give up his First Amendment rights. Cf. *Bart v. Telford, supra.* But there is nothing in the Bill of Rights about protecting contractual rights as such. Such rights are protected under the due process clause of the Fourteenth Amendment if at all only as a form of property, of which the state cannot deprive a person without due process of law; they are not protected by the due process clause viewed as a conduit for applying portions of the Bill of Rights to the states. There was thus no denial of substantive due process here. ·

In rejecting the plaintiffs' constitutional claims, we express no view of the merits of their contract claims, which they are free to pursue in state court.

AFFIRMED.

FLAUM, Circuit Judge, concurring.

As the majority opinion states, *ante* at 362, the appellees have not appealed from the district court ruling that the alleged breach of contract was a deprivation of property within the meaning of the fourteenth amendment. The majority opinion states that this court may consider any grounds for affirmance that the record will support, citing *Brown v. Marquette Savings & Loan Ass'n,* 686 F.2d 608, 611 (7th Cir. 1982). I read *Brown,* however, to state that this court will affirm a judgment if the record supports affirmance where the district court relied on a wrong ground or applied the wrong reasoning for its judgment. *See also Panter v. Marshall Field & Co.,* 646 F.2d 271, 281 (7th Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). I understand the majority opinion here to affirm the decision below on the very grounds relied on by the district court—that there was no denial of due process. *See ante* at 364–365. I therefore see no need to address other grounds for affirmance not raised before this court.

Furthermore, as the United States Supreme Court has recently granted certiorari in the case of *Vail v. Board of Education,* 706 F.2d 1435 (7th Cir.), *cert. granted,* —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983) to consider the extent to which contractual rights may constitute property interests under the fourteenth amendment, I find it unnecessary to reach the issue of whether there was a deprivation of property in this case, and I do not join in the portion of the majority opinion discussing this issue. In addition, I deem it appropriate to restrict the examination of whether there has been a denial of due process to the specific facts of this case.

Appellants allege that they have been deprived of their accrued compensatory time off without due process of law. Both parties agree that appellants could bring a state court suit for breach of contract. Thus, the specific issue presented by this appeal is whether the due process clause requires more than a post-deprivation state lawsuit for breach of contract involving a denial of accrued compensatory time off.

The due process clause requires some form of hearing before a final deprivation of a property interest by the state. · *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982); *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). However, the state is not always required to provide the hearing before the initial deprivation of property. *See Parratt v. Taylor,* 451 U.S. at 540, 101 S.Ct. at 1915; *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Where there has been a deprivation of property, merely postponing the hearing does not deny due process if there is an adequate opportunity given for an ultimate determination of liability. *Parratt v. Taylor,* 451 U.S. at 540, 101 S.Ct. at 1915 (quoting *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974)).

Whether the hearing must be held before an alleged initial deprivation of property

depends on three factors: the private interest involved; the risk of government error and the probable value of other procedural safeguards; and the state's interest, including the fiscal and administrative burdens of the proposed procedural safeguards. *Logan v. Zimmerman Brush Co.,* 455 U.S. at 434, 102 S.Ct. at 1157; *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903.

An analysis of the private interest involved focuses on the importance of the interest and the finality of the deprivation. *Logan v. Zimmerman Brush Co.,* 455 U.S. at 434, 102 S.Ct. at 1157. Appellants' interest in having their employment contracts honored is not insubstantial. However, it is not clear that the deprivation of property charged here is final. Apparently, there has been no decision that appellants can never receive their accrued compensatory leave, merely that current conditions do not permit their taking time off at present.[1] Additionally, it may well be that appellants will not have been finally deprived of any property rights until a state court has rejected their breach of contract claims. *See Bonner v. Coughlin,* 517 F.2d 1311, 1320 n. 27 (7th Cir.1975), *modified en banc,* 545 F.2d 565 (1976), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). *Cf. Parratt v. Taylor,* 451 U.S. at 543, 101 S.Ct. at 1916; *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). *Compare Logan v. Zimmerman Brush Co.,* 455 U.S. at 434, 102 S.Ct. at 1157 (deprivation was final because plaintiff had no opportunity to obtain judicial review).

The risk of government error and the value of a predeprivation hearing in reducing that risk here appears insubstantial. The alleged deprivation in this case is a breach of contract that occurs each time the sheriff refuses to allow one of the appellants to take compensatory time off. To require a hearing before each breach would produce few positive results. The appellants are well aware that the sheriff cannot currently grant compensatory time off and maintain minimum staffing levels. The sheriff is well aware that the appellants want to take their accrued time off forthwith. The parties in essence are at a stalemate; a hearing would do little to advance a resolution of the dispute. This is not a case requiring individualized determinations of fact or law, *see Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); hence individualized opportunities for hearings should not be required.

Finally, the state's interest in not providing numerous predeprivation hearings is substantial. To require a hearing for each breach could well place an undue administrative burden on the sheriff and county. Moreover, if this court were to require any procedures other than an "informal give-and-take" between the parties, *see Goss v. Lopez,* 419 U.S. at 584, 95 S.Ct. at 741; *Ingraham v. Wright,* 430 U.S. at 695, 97 S.Ct. at 1425 (White, J., concurring), hearings could also impose an unwarranted fiscal burden upon the appellees.

On balance, then, individual predeprivation hearings should not be required. A state court suit for breach of contract provides adequate protection of the appellants' interests. The relief provided by a state court suit might not be identical to that which appellants could receive under section 1983. However, state court relief is adequate for due process purposes if it fully compensates a plaintiff for his property loss. *Parratt v. Taylor,* 451 U.S. at 544–45, 101 S.Ct. at 1917–18.

Appellants also allege that they have been deprived of their property without substantive due process of law. The Supreme Court, however, has analyzed the issue of deprivation of property as involving only procedural due process rights. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[2] Similarly, this court

---

**1.** Counsel for appellees stated at oral argument that the personnel policy is still in effect. Documentation of overtime worked continues. Further, the record reflects no indication that the granting of the accrued time off will not take place if staffing requirements permit.

**2.** In *Parratt,* the majority opinion did not discuss substantive due process. Justices White,

has analyzed the issue as one of procedural due process. *See, e.g., Vail v. Board of Education,* 706 F.2d 1435 (7th Cir.), *cert. granted,* —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983). Thus, substantive due process is inapplicable here.

Moreover, this court has recently held that an administration of local law causing a deprivation of property does not implicate substantive due process where plaintiffs have an adequate state remedy. *Albery v. Reddig,* 718 F.2d 245 (1983). In *Albery,* plaintiffs complained that the administration of the local zoning ordinance denied them substantive due process of law. The court found that plaintiffs had an adequate state remedy and noted:

> That the zoning laws may have been administered negligently or without an appropriately sensitive concern for plaintiffs' interest is not a violation of their Fourteenth Amendment rights if state remedies are adequate.... The Alberys have been subjected to an uncertain, and perhaps frustrating, administration of a typically local regulation. But they have not been deprived of a property interest (or even more clearly of a liberty interest) without due process of law.

718 F.2d at 251 (footnote reference omitted). Here, as in *Albery,* appellants are complaining about the administration of local law. A state court remedy provides them with all the process that is due.

For the foregoing reasons, I would affirm the decision of the district court.

Blackmun and Powell each concurred. Each found generally that the due process clause embodies substantive limits on state action. However, no member of the Court found substantive due process to be implicated in that case.