**William JACKSON, Plaintiff,**

v.

**ILLINOIS DEPARTMENT OF CORRECTIONS, et al., Defendants.**

**No. 82 C 2490.**

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1983.

Burton S. Odelson, Mark H. Sterk, Odelson & Associates, Ltd., Evergreen Park, Ill., for plaintiff.

Neil F. Hartigan, Atty. Gen. of Ill., Ronald L. Bell, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

William Jackson ("Jackson") sues the Illinois Department of Corrections ("Department") and six of its officials[1] under 42 U.S.C. § 1983 ("Section 1983"), alleging he was deprived of due process of law when he was barred from receiving visits from his friend Sharon Sue Spencer ("Spencer") at Stateville. This Court's July 1, 1983 memorandum opinion and order (the "Opinion," 567 F.Supp. 1021, 1025) denied defendants' Fed.R.Civ.P. ("Rule") 12(b)(6) motion to dismiss because Ill.Rev.Stat. ch. 38, § 1003–8–7(b)(2) "confers on Jackson a state-created liberty interest (akin to that given constitutional protection in *Hewitt* [*v. Helms*, ___ U.S. ___, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)] in preserving his visiting privileges against imposition of excessive restraint."

Defendants now move under Rule 56 for summary judgment, contending alternatively (1) Jackson received all the process that was constitutionally required or (2) even were the process accorded him constitutionally inadequate, (a) the individual de-

---

1. Stateville Correctional Center ("Stateville"); Warden Richard DeRobertis ("DeRobertis"); Stateville Assistant Warden Michael O'Leary ("O'Leary"); Chairman of Stateville's Institutional Inquiry Board ("Stateville's Board") Mel Allen ("Allen"); Stateville Internal Affairs investigator Price ("Price") and correctional officer Mathis ("Mathis"); and Chief of Department's Prisoner Advocacy Services Marvin Manar ("Manar").

fendants are immune from Section 1983 liability under the qualified immunity doctrine and (b) Department is not a "person" subject to suit under Section 1983. For the first of those reasons, defendants' motion is granted.[2].

### Facts

Jackson alleges[3] Mathis told Jackson on January 24, 1982[4] that he would arrange a visit with Spencer outside the designated visiting area in return for a $20 payment. When Spencer arrived at Stateville later that day to visit Jackson, Mathis escorted her to a room outside the designated area. Lt. Rodriguez observed Mathis doing so and filed a report of the incident.

On January 26 O'Leary issued a Stop Order (the "Order") prohibiting Spencer from visiting Jackson. Both Jackson and Spencer were notified of the Order (Jackson by delivery of a copy and Spencer by transmittal of a letter stating its terms). In addition to identifying both Jackson and Spencer, the Order provided:

. Rationale for Stop: Inappropriate Conduct. This Stop Order will remain in effect until further notice.

On January 29 Jackson filed a grievance with the Stateville Institutional Inquiry Board ("Stateville's Board") challenging the Order. On February 4 Jackson asked for a polygraph exam in a letter to O'Leary, a request Jackson renewed on February 17 when interviewed about the incident by Price for Internal Investigations (March 4 Internal Investigations Preliminary Report).

Jackson then attempted to assert his grievance before Department's Administrative Review Board ("Department's Board"). On March 8 Department Director Michael Lane wrote Jackson Department's Board would not consider his grievance until the matter had been processed by Stateville's Board.[5] On March 11 Jackson spoke with DeRobertis about Stateville's Board's failure to conduct a hearing on the grievance. DeRobertis responded they were going to await polygraph results.

On March 19 T. McWilliams from Internal Investigations asked O'Leary to order a polygraph exam. On March 23 Allen told Jackson his grievance before Stateville's Board could not be processed until Internal Investigations finished its investigation. On March 25 DeRobertis asked for the administration of a polygraph exam, and that test was finally conducted March 30. On April 29[6] the polygraph results were transmitted to DeRobertis, and on May 5 O'Leary rescinded the Order. Internal Investigations submitted its final report on June 11, a week after the Employee Review Board dismissed the improper conduct charges against Mathis.

### Procedural Due Process

 Jackson argues the process was defective because he was not given a hearing before the Order issued, the Order did not state an adequate rationale, and the investigation was not conducted within a reasonable time. All those claims, viewed against a backdrop of undisputed facts,[7] pose the question of what process—what

---

**2.** It is therefore unnecessary to address the second set of arguments as to defendants' suability.

**3.** In accordance with Rule 56(c) this statement is drawn in part from allegations of the Complaint admitted by defendants. As for the rest, even though the current motion is for summary judgment, Jackson has not tendered any evidentiary response to defendants' submission of evidence.

**4.** All subsequent dates without a year designation were also in 1982.

**5.** Jackson also alleges Manar advised him to tell O'Leary that Spencer had gone to the room because of a sudden illness. Spencer wrote a letter to that effect March 3.

**6.** ·It appears from the date-received stamp that Internal Investigations also received the polygraph results in April.

**7.** Perhaps more accurately, defendants must show no genuine issues of material fact exist and thus they are entitled to judgment as a matter of law. Thus the evidence is viewed in the light most favorable to Jackson. Summary judgment may still issue if any disputed facts are non-outcome-determinative. *Egger v. Phillips,* 710 F.2d 292, 297–98 (7th Cir.1983).

procedure—was due Jackson in depriving him of the liberty or property interest represented by visiting privileges. On that score *Shango v. Jurich*, 681 F.2d 1091, 1097–98 (7th Cir.1982) teaches:

> Although the existence of a liberty or property interest may be ascertained by reference to state law, once such an interest is identified, the task of defining the procedural protections which attach to that interest is wholly a matter of federal constitutional law and is accomplished through application of the balancing analysis of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See, e.g., United States Labor Party v. Oremus*, 619 F.2d 683, 689 (7th Cir.1980). *See generally Arnett v. Kennedy*, 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15 (1974) (Powell, J., concurring) [416 U.S. at] 177, 94 S.Ct. at 1655 (White, J., concurring and dissenting in part) [416 U.S. at] 206, 94 S.Ct. at 1669 (Marshall, J., dissenting). To be sure, state procedural protections are not ignored. Rather, once it is determined what process is due to the individual before he can be deprived of the specific liberty or property interest by the state, state procedures are scrutinized to see if they comport with the federal procedural due process requirements. However, state procedural protections cannot define what process is due. The Fourteenth Amendment's limitation on state action would be illusory indeed if state practices were synonymous with due process.

■ *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) requires this Court to consider three factors to determine what process is due Jackson:

1. Jackson's private interest;

2. the risk of erroneous deprivation of Jackson's interest through the procedure used and the probable value (if any) of additional or different procedures to reduce such risk; and

3. the government's interest, which includes the fiscal and administrative burdens different or additional procedures would pose.

*Accord, Brown v. Brienen*, 722 F.2d 360 at 364–67 (7th Cir.1983); *id.* at 367–68 (Flaum, J., concurring).

As Judge Posner pointed out just two weeks ago in *Brown* (at 365), the first factor in the *Mathews* analysis looks back to the nature of the liberty or property interest of which a plaintiff has been deprived. Jackson's interest in his visiting privileges, though not de minimis, surely does not reach the level of importance of the permanent loss of good time considered in *Wolff v. McDonnell*, 418 U.S. 539, 560–61, 571–72 n. 19, 94 S.Ct. 2963, 2976–77, 2982 n. 19, 41 L.Ed.2d 935 (1974).[8] Moreover the Court in *Hewitt*, 103 S.Ct. at 872 responded to the *Mathews* formulation by giving appropriate deference to the prison administrators' interests in order, discipline and institutional security:

> Plainly, these governmental interests are of great importance. The safety of the institution's guards and inmates is perhaps the most fundamental responsibility of the prison administration.

■ Thus the *Mathews* balancing process calls for a determination of what procedures should be required to reduce the risk of erroneous deprivation of visiting privileges without unduly burdening the state's interest in security, order and discipline. Certainly that balancing entitles Jackson to (1) notice of why his visiting privileges with Spencer were suspended, (2) an investigation of the reasons for suspension (including the opportunity for Jackson to submit any statement or relevant evidence he wishes to) and (3) a final decision by the prison officials, made and communicated within a reasonable time after the suspension. But on perhaps the most critical issue here, this Court determines due process does *not* mandate a *pre*-suspension hearing for Jackson.

**8.** There the Court held due process required advance notice, a written statement of evidence relied on and reasons for the decision, and the inmate's ability to call witnesses and present documentary evidence. *Id.* at 563–72, 94 S.Ct. at 2978–82.

■ On that last score, it is a familiar truism that pre-deprivation hearings are not required if post-deprivation procedures satisfy due process concerns. Thus courts have consistently held pre-deprivation hearings are not required for the temporary suspension (pending final determination) of private interests substantially weightier than Jackson's here. See cases discussed in *Brown*, at 365–66. In view of (1) the state's strong interest in prison security, (2) the lower place in the lists occupied by Jackson's interest in Spencer's visits, (3) the facial reasonableness of the state's concern about the circumstances of Spencer's visit that triggered the Order and (4) the fact the Order was not a final deprivation, a pre-deprivation hearing was not integral to due process.

That leaves for examination Jackson's two other contentions:

1. adequacy of the notice and
2. whether the prison officials took final action within a reasonable time.

Jackson fails on those matters as well.

■ Notice is required for at least two reasons: to identify the charges and to allow the charged party to prepare a defense. *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2978. Jackson was present at the time of the incident and was given notice of the Order just two days after Spencer's visit. As already stated, the Order identified both Jackson and Spencer and stated "Inappropriate conduct" as its rationale. Of course such a cryptic label is not always going to satisfy the constitutional minimum, but under the circumstances of this case the notice provided enough information to meet the constitutional standard.

■ As for the "reasonable time" factor, Jackson points to the lapse of some three months between the Order's issuance and its rescission. Once more the process is one of balancing Jackson's interests against those of the prison (including the administrative burden a shorter time period would pose). And once more the prison's interests include the critical element of security. Thus three related areas converged to affect the time required: investigation of employee misconduct, investigation of visitor and inmate misconduct and investigation of an inmate grievance.[9]

How did those multiple needs impact here? On the evidence presented, Jackson was able to tell his account of the incident to the investigator within one month. However the entire ongoing investigation, with its periodic reports and various actions, extended over the full three-month period. Prison administrators were confronted not only with Jackson's accusations of Mathis' impropriety but with Spencer's doubtful account of the occurrence. Their investigation necessarily had to inquire into the roles of all three participants: Mathis, Spencer and Jackson. Defendants can scarcely be faulted for suspending Spencer's visiting privileges in the interim. True enough, the whole process might have been conducted with more speed, but under all the circumstances this Court cannot characterize the time differential as rising to constitutional dimensions in due process terms.

### Conclusion

No genuine issue of material fact exists. There has been no infringement of Jackson's due process rights. Defendants are entitled to a judgment as a matter of law. This action is dismissed with prejudice.

---

9. Neither party has raised the applicability of several administrative regulations regarding investigation of employee misconduct (A.R. 219, A.R. 220), processing of grievances (A.R. 845) and processing of disciplinary reports (A.R. 804). Because this Court's focus is constitutional, compliance with administrative procedures becomes relevant only if such procedures are constitutionally mandated. In addition, defendant's argument that Jackson was not disciplined ignores the obvious fact that excluding Spencer impinged on Jackson's visiting privileges, in which Jackson has a protected liberty interest.