REID, Judge.
This is an appeal by Aveneal Meaux and Dudley Bourque, employees of the Department of Highways of the State of Louisiana, from an adverse decision rendered by the Civil Service Commission.
Appellants had filed an appeal to the Civil Service Commission in which they alleged that they were employees of the Department of Highways, as bridge tenders on the Perry Bridge in Vermilion Parish, Louisiana, and that contrary to the Constitution and laws of the State of Louisiana, and the rules and regulations of the Civil Service Commission, the Department of Highways illegally enlarged the work week of bridge tenders, as applied to appellants, from 48 hours per week to 72 hours per week, and requested that this action be annulled, vacated and set aside and that the Department of Highways be ordered to maintain appellants’ wages at a level based on a 48 hour work week.
The Department of Highways filed a motion to dismiss the appeal to the Civil Service Commission, alleging that under the Constitution and laws of the State of Louisiana the Commission is solely responsible for the establishment of the working hours of employees in the classified service in the State of Louisiana, and that the appeal alleged no discrimination and no wrong for which a remedy by appeal exists.
The case was submitted to the Civil Service Commission on a joint stipulation by counsel for appellants and appellee. It was stipulated that there was only the question of law involved and no testimony need be introduced at the time of the trial. After entering the stipulation and filing certain documents, the Civil Service Commission, by an opinion dated and filed August 5, 1968, maintained the Department of Highways’ motion to dismiss, dismissed the appeal, and the appellants have lodged this appeal.
In order to discuss the facts of this particular case, it is also necessary to have some discussion of a prior appeal made to the Civil Service Commission by the appellants herein and two other employees of the Department of Highways, Civil Service Commission Docket No. 763. The appellants then, as now, were employed by the Department of Highways of the State of Louisiana as bridge tenders on the Perry Bridge in Vermilion Parish and were so employed prior to August 1, 1966. On August 1, 1966, the Civil Service Commission promulgated a rule governing the overtime pay of the State employees, which rule provided that full time State employees, within a classified position of Civil Service, would have a 40-hour work week, provided that an appointing authority might specify a work week exceeding 40 hours for employees in specific classes of positions within his agency or, with the approval of the Commission, for employees in specific divisions or activities within his agency. This rule was established pursuant to Article 14, Section 15(1) of the Constitution of the State of Louisiana, which in effect provides that the Civil Service Commission has the authority and power, after public notice and public hearing, to adopt, *682 amend, repeal and enforce rules which have the effect of law. Section 15(1) (6) of the same Article gives the Commission authority to establish and recommend hours of work, provided that the rules establishing the hours of work shall not become effective until approved by the governor or governing body of the City, as the case may be. Subsection (c) of said Section 15(1) provides as follows:
“The State and City Civil Service Commissions shall adopt:
5fc ‡ ‡ ‡ %
(c) Rules fixing minimum, maximum, and such intermediate rates of compensation as may be necessary, and establishing uniform pay plans and amendments thereof from time to time, according to duties and responsibilities, on the basis of recommendations of the Director after consultation by the Director with appointing authorities and the State or municipal fiscal officer, as the case may be, and resort to such other measures of investigation and research as he may deem desirable. * * * A pay plan, or amendments thereto, of the State shall become effective only after approval of the Governor; and a pay plan and amendments thereto for any city shall become effective only after approval by the governing body of said city.”
Following a meeting of the Commission on August 2-3, 1966, and acting upon a memorandum from the Department of Highways, the Commission fixed the special work week for the classes of bridge tenders as follows:
“(1) Tenders on bridges opening 1 to 30 times per month — 24 hours per day, 6 days per week. These bridges are more or less on an 'on call’ basis.
(2) Tenders on bridges opening 31 to 75 times per month — 12 hours per day, 6 days per week.
(3) Tenders on other bridges — 8 hours per day, 6 days per week.”
Appellants in the original hearing argued, and it was so stipulated, that the Perry Bridge across the Vermilion River had opened each month during the year 1966 and during the first three months of 1967, in excess of 75 times per month. They further alleged the work week should have been a 48-hour week, but that they had been required by their employer to work for a period of 12 hours per day, six days per week, for a total of 72 hours per week, or 24 hours per week in excess of the work week established for bridge tenders performing the services required of appellants.
In the first appeal the Civil Service Commission affirmed appellants’ position and stated that the rules of the Civil Service Commission governing overtime pay superseded any regulation of the Department of Highways. The Commission ordered the Department of Highways to give the employees compensatory leave or overtime pay for their pay periods ending less than 30 days prior to the filing of their appeals on April 3, 1967. That opinion was rendered on November 27, 1967. Neither party appealed the decision of the Commission.
The Commission’s opinion rendered in the first appeal showed that even though the Department of Highways had requested the work week be established according to the number of openings of the bridge, this had never been implemented by the Department of Highways and the work week was actually predicated on the number of bridge tenders assigned to any particular bridge.
The facts show that following the Commission’s decision in that first appeal the appellants made repeated demands upon the Department of Highways for their back pay. Apparently their demands had been unsuccessful. The record herein contains a copy of a letter dated May 2, 1968, written by Mr. Toxie L. Bush, Jr., the attorney for appellants, to Mr. W. W. Mc-Dougall, Director of Personnel, Department of Civil Service. The letter states *683 that a petition for mandamus had been filed on behalf of appellants on April 16, 1968. It further states that after the writ of mandamus was served upon the defendants, Mr. Robert Jones, an attorney for the Department of Highways, called him on April 24 to state that two checks would be mailed to his clients, which the attorney for appellants claimed were not sufficient and not in compliance with the Commission’s original order. The letter further states that at the request of the attorney for the Department of Highways, the hearing on the writ of mandamus previously fixed for Monday, April 29, had been re-fixed for May 9, 1968. According to the letter, during the same conversation of April 24, with the attorney for the Department of Highways, appellant’s attorney was informed that the Department of Highways had applied to the Civil Service Commission for a change in the work rules for bridge tenders and that the weekly hours worked by bridge tenders were predicated upon the number of tenders assigned to each bridge rather than the number of bridge openings each month. Appellants’ attorney states that he then informed the attorney for the Department that his clients had no knowledge of any change in the regulations and that apparently the change had occurred since November 27, 1967, the date on which the Commission had issued its ruling in the first appeal, and he requested a copy of the Civil Service Regulation regarding a change in the rules which would show a reduction in the pay of his clients.
The record also contains a copy of Mr. McDougall’s reply to the above mentioned letter, which reply is dated May 6, 1968, and reads as follows:
“Dear Mr. Bush:
“This will respond to your letter of May 2, 1968, concerning the appeals of Aveneal Meaux, et al (State Department of Highways), Docket No. 763.
“We do not have in our possession the time sheets for the appellants covering the period from March 1967 to date. Therefore, we have contacted Mr. Will Grass, Personnel Officer for the Department of Highways, who has assured us that he will mail you copies direct.
“A certified copy of the Civil Service Commission’s Opinion of November 27, 1967 in Docket No. 763 is enclosed.
“I am also enclosing copies of Chapters 6 and 11 of the Civil Service Rules, dealing with the granting of payments or compensatory leave credits for overtime worked by employees. Your attention is particularly invited to Rule 11.1(b).
“Following the filing of the Commission’s Opinion in Docket No. 763, the Department of Highways requested the Commission to recognize a clarification of its intentions' in the establishment of work weeks for Bridge Tenders. Copies of the Department’s presentation and the resulting Commission action are enclosed.
“A copy of Chapter 12 of the Civil Service Rules, dealing with reductions in employees’ pay, is enclosed. It might be pointed out, however, that the provisions of Chapter 12 would not appear to be applicable in this case. Rather, any reduction in overtime pay or compensatory leave credits granted, would normally result from the lengthening of the employees’ standard work weeks through the application of the provisions of Chapter 11.
“Also enclosed is a copy of the Conversion tables contained in the Louisiana State Personnel Manual.”
The Department’s request for a clarification of its intentions in the establishment of work weeks for bridge tenders is contained in a letter of January 23, 1968, from the Director of the Department of High *684 ways to Mr. McDougall. That letter reads as follows:
“Dear Mr. McDougall:
“Please refer to Transmittal Sheet No. 127 with respect to the Civil Service rules governing overtime work of Highway employees, our memorandum to you of July 27, 1966, concerning the work weeks in the Bridge Tender class and the decision of the Civil Service Commission in proceedings bearing docket No. 763 upon the docket of the Civil Service Commission and entitled In Re: Aveneal Meaux et al,’ which opinion of the Commission is dated November 27, 1967.
“It was the intention of this Department, by its memorandum of July 27, 1966, to establish for Bridge Tenders a work week based upon the number of tenders assigned to. a given bridge. From the opinion of the Commission dated November 27, 1966, it appears that this memorandum had the effect of establishing a work week in the Bridge Tender class based upon the number of openings per month of the bridge to which each tender is assigned.
“The use of the number of openings of a given bridge as a criteria for establishing the work week of the tenders assigned to that bridge is not reliable and is unworkable in that fluctuations of the openings from month to month on many of our bridges is unpredictable resulting in this Department’s being unable to properly calculate the cost of its operation from month to month. I attach hereto a copy of our bulletin for the year 1968 showing the number of bridge openings for each movable bridge maintained by the Department of Highways. As is therein reflected (see bridges indicated by red check), numerous bridges fluctuate from month to month above and below any given number of openings, such as 75 openings. It would therefore be impossible for this Department to know from week to week and from month to month whether any given Bridge Tender on such a bridge would or would not be limited to a 48 hour work week.
“In addition, the number of tenders assigned to a bridge varies in accordance with the extra duties assigned them upon the bridge, such as maintenance and cleaning and according to the mechanical type bridge involved.
“The size of the structure and duties assigned the Bridge Tenders also affect the number of tenders assigned. In some Districts, tenders are required to grease the structure and keep the decks clean. In Districts where we have bridges on the Ouachita, Black River, etc., openings are very infrequent. In fact, over most of the year, bridges are opened only as trial openings; however, in most cases, two tenders are employed because they are required to keep the decks of the bridge swept, grease machinery, care for navigation lights, etc.
“In some cases where a bridge is opened only a few times (less than 30) and the tender happens to live in a rural community adjacent to the bridge, one tender can satisfactorily operate the bridge. In other cases, the bridge may operate less than 30 times per month and be located in an isolated area requiring tenders to travel to the bridge, making it necessary to have at least two tenders.
“On some of our pontoon bridges, four tenders are employed due to the complex machinery, cable assembly, etc., where work of more than one tender is required at certain times. Also, the quantity of drift, water hyacinths, etc., accumulating at these structures require that more than one tender be on duty at certain times. Still some of these pontoon bridges might not open more than 50 or 60 times.
“As is obvious from the many above mentioned variables, the use of bridge openings solely as the criteria for estab *685 lishing the work week of a Bridge Tender will result in great hardship to the Department and in serious inequities to the personnel involved.
“It is therefore requested that you submit to the Civil Service Commission for their approval our recommendation that the work week of Bridge Tenders be defined as follows :
“Bridge Tenders Assigned to a facility with two tenders shall work a 72 hour week (six 12 hour shifts).
“Bridge Tenders assigned to a facility with three tenders shall work a 48 hour week (six 8 hour shifts).
“Bridge Tenders assigned to a facility with one tender shall work hours as authorized by the Director as indicated on the SF-1 prepared at the time of employment. Such Bridge Tenders are considered ‘On Call.’
“Your assistance in securing the approval of the Civil Service Commission in this respect will be sincerely appreciated.”
This request of the Department was acted on favorably by the Civil Service Commission, as shown by letter dated February 7, 1968, from Mr. McDougall to the Director of the Department of Highways, which reads as follows:
“Dear Mr. Stewart:
“This will refer to your letter of January 23, 1968 in which you request Civil Service Commission approval under Rule 11.1(b) to specify work weeks exceeding forty (40) hours for Bridge Tenders.
“At its meeting on February 6, 1968 the Civil Service Commission approved the following work weeks for Bridge Tenders employed by your Department:
“Bridge Tenders assigned to a facility with two tenders shall work a 72 hour week (six 12 hour shifts).
“Bridge Tenders assigned to a facility with three tenders shall work a 48 hour week (six 8 hour shifts).
“Bridge Tenders assigned to a facility with one tender shall work hours as authorized by the Director as indicated on the SF-1 prepared at the time of employment. Such Bridge Tenders are considered ‘On Call’.”
On May 29, 1968, the attorney for appellants herein filed what he entitled a supplemental petition, but which was treated as a new petition for appeal and given a new docket number by the Civil Service Commission, that is, Docket No. 831. The petition sets forth the facts mentioned above as to the original hearing and as to the fact that the Department of Highways had requested the change in the work week of bridge tenders, which would in effect enlarge their weekly work week an additional four hours per day, six days per week, or a total of 24 hours per week, which action would in effect cut their earnings. The petition further alleges the appellants had not been guilty of any offense, neglect of duty, or other thing which would warrant such a reduction in pay, and asked that the action of the Department of Highways be annulled.
As already shown, the second appeal to the Commission, like the first, was submitted on a joint stipulation “that the sole question to be decided by the Commission in the immediate appeal is the efficacy and legality of the action of the Department of Highways in applying for, and the action of the Commission dated February 6, 1968 in approving” the new work weeks for bridge tenders employed by the Department of Highways of the State of Louisiana, as the same applies to the appellants. The new work week was then quoted, the same as we have quoted above in Mr. McDougall’s letter of February 6 to the Director of the Highway Department. It was further stipulated that since there was only a question of law, there was no reason for the taking of testimony of witness *686 es, and the matter was “submitted for the decision of the Commission solely upon the law applicable thereto.” Attached to the stipulation was a copy of the letter quoted above dated January 23, 1968, from the Department to Mr. McDougall, and Mr. McDougall’s answer of February 7, 1968, and also a copy of the Civil Service Commission’s Opinion of November 27, 1967, in Docket No. 763, and a copy of a Uniform Pay Plan Rate Schedule applicable to State employees.
The Commission’s Opinion of August S, 1968, shows that the Highway Department’s motion to dismiss was maintained on two propositions, that is, the Commission’s contention, firstly, that the appellants had filed their appeal on May 29, 1968, which appeared to be tardy filing under Rule 13.12, and no showing was made that the appeal was timely, and, secondly, that even if it was held that the filing was timely, the action of the Commission in approving work weeks for bridge tenders employed with the Department of Highways as requested by that agency pursuant to the provisions of Rule 11.1(b) was in complete conformity with the Civil Service Law and Rules, and furthermore, appellants had not shown that the Department of Highways had in fact acted arbitrarily and from time to time increased or decreased the work week of bridge tenders, and until such an arbitrary exercise of authority or abuse of discretion was shown, appellants’ contention was without merit.
Despite the various allegations of error presented in the brief on behalf of appellants, this case actually presents two questions: (1) the timeliness of the appeal, and (2) the legality of certain provisions of Chapter 11 of the Civil Service Rules.
Regarding the timeliness of the appeal, it should be pointed out that the joint stipulation filed in the record sets forth the issues to be resolved by the Commission, and the question of the timeliness of the filing of the appeal was not raised by the Department of Highways.
Rule 13.12 of the Rules of the Civil Service Commission reads as follows:
“Delay for making appeal.
“(a) No appeal shall be effective unless a written notice complying with the requirements of Rule 13.11 is received in the Office of the Director in the Department of State Civil Service at Baton Rouge, Louisiana.
1. Within thirty (30) calendar days after the date on which appellant received notice of the action on which the appeal is based when written notice before or after the action is required by these Rules, or
2. Within thirty (30) calendar days after the date when appellant learned or was aware that the action complained of had occurred when no written notice is required by these Rules, or if required, was given tardily or not at all.”
For the Commission to rule that the appeal was not timely, it would have had to reason that the appellants had constructive knowledge of the change in the Commission’s ruling on the work week more than 30 days before the appeal was filed because their attorney had received this information on April 24, 1968, by a telephone message from the attorney for the Department of Highways, and all of the information conveyed to their attorney was imputable to them and, therefore, they had received constructive notice on April 24, 1968.
With such a ruling we cannot agree. For the Commission to hold that the mere telephone conversation between the attorney for the Department of Highways and the attorney for appellants would be such as to put the appellants on notice as to the issue involved herein would certainly be unequitable. The first official notice that appellants, through their attorney, could be said to have had was the letter from Mr. *687 McDougall dated May 6, 1968, and since the petition for appeal was filed on May 29, 1968, the appeal was filed within 30 days from the date of such notice. A casual telephone conversation between attorneys concerning an unrelated purpose cannot conceivably be construed as notice to the appellants.
While we have no argument with the cases quoted by attorney for the Civil Service, Commission in his brief to this Court, we must nevertheless point out that those cases are not applicable herein.. In those cases the attorney had notice concerning the matter that was immediately at issue, whereas in this case the attorney had contacted the attorney for the Department of Highways regarding an unrelated matter and was merely informed during the conversation about a change in the rules. Furthermore, LSA-Const. Art. 14, Sec. 15 (I)(b) provides as follows:
“Employees affected by the allocation or reallocation of a position to a class, or by any changes in the classification plan, shall be afforded a reasonable opportunity to be heard thereon, first by the Director and later by appeal to the Commission after filing with the Director a written request for a hearing.”
In effect, both the Commission and the Department are clutching at straws in contending that the appeal was not timely filed.
The second question to be discussed concerns the legality of certain provisions of Chapter 11 of the Civil Service Rules.
Appellants’ argument that Rule 11.1(b), which delegates the appointing authority the right to exempt certain classes from the 40-hour week, is unconstitutional because the Constitution specifically grants this duty to the Civil Service Commission and does not provide for the delegation of said duty, is a position with which this Court cannot agree.
Rule 11.1(a) reads as follows:
“(a) Subject to the provisions of Subsections (b) and (c) hereof, the work week for each full-time employee in the Classified Service shall be forty (40) hours.”
and Rule 11.1(b) reads as follows:
“(b) An appointing authority may specify a work week exceeding forty (40) hours for employees in specific classes of positions within his agency or, with the approval of the Commission, for employees in specific divisions or activities within his agency.”
Article 14, Section 15(1) (6) of the Constitution states that it is the duty of the Civil Service Commission to enact rules establishing and regulating hours of work of classified employees, that these rules must be recommended by the Civil Service Commission, and the governor must approve these rules before they become effective.
The position of the Civil Service Commission that the governor approves rules pertaining to hours of work but does not approve the hours of work per se, is indeed correct. Once the rules of work are approved by the governor, they do have the effect of law and are binding on the State Civil Service Commission. And, as set forth in the Commission’s brief, once the rules attain the status of law, it is the responsibility of the Civil Service Commission to apply them.
The rules involved in this case were approved by Governor McKeithen and made effective August 1, 1966. Chapter 11, Sub-paragraph 1 of these rules provides basically that the work week of a full-time employee of a classified service shall be 40 hours and the appointing authority may specify a work week exceeding 40 hours for employees in specific classes of positions within his agency or, with the approval of the Commission, for employees in *688 specific divisions or activities within his agency.
The Rules do not delegate an arbitrary power to an appointing authority as the appellants contend. On the contrary, the appointing authority must apply to the Civil Service Commission for approval of a work week exceeding 40 hours for any specific division or activities within an agency. The Department of Highways in this case submitted a request to the Civil Service Commission for the purpose of obtaining approval of work weeks for specific divisions or activities within the agency and the request was approved. It is, therefore, felt that Rule 11.1(b) of the Civil Service Commission is not unconstitutional.
The real thrust of appellants’ case, assuming that Rule 11.1(b) is constitutional, is whether or not the requirements of Rule 11.1(b) have been met, and whether <or not the method used met the test of Article 14, Section 15 (I) (b) of the Constitution. Under that Section, the Constitution directs the Civil Service Commission to adopt a classification plan, prepared and submitted by the Director, requiring the classification of positions in the classified service according to similarity of duties performed and responsibilities assumed, so that the same qualifications may reasonably be required for, and the same schedule of pay may be equitably applied to all positions in the same class. The Subsection then goes on to state that as new positions are created or additional classes are established, or existing classes are divided, combined, altered or abolished, the Director shall make such allocations or reallocations of positions to new or existing classes as are necessitated thereby.
In the instant case, the Commission has not specified a work week for employees in specific classes of positions within the agency, but in effect has permitted the Department of Highways to determine the hours which bridge tenders can work by merely saying how many bridge tenders shall be on each bridge. The Department could decide that one bridge tender shall work 72 hours per week. It could then assign two tenders to the bridge, thereby changing the hourly work week. It could then assign a third tender to the bridge, again changing the hourly work week.
It is the opinion of this Court that what the Highway Department has done is to ask the Civil Service Commission to circumvent its holding in the original hearing (Docket No. 763). The Department admitted that even though it had requested that the work week depend upon the number of openings of the bridge, it had never put this into effect. It had, in fact, arbitrarily decided the work week by the number of bridge tenders put on a bridge.
It may be true that the use of the number of openings of a given bridge is not reliable and is an unworkable criteria for establishing the work week of bridge tenders. It may also be true that there are different types of bridges involved; that there is complex machinery used in some bridges as against other bridges which are simpler; that the duties, such as maintenance and cleaning, vary according to the mechanical type bridge involved; and that one bridge in a rural community may be opened only a few times and one tender living adjacent to the bridge could satisfactorily operate the bridge, while in another rural community a bridge may be opened only a few times but two tenders are required because they have to drive to the bridge. There would, however, be nothing to prevent the Commission, or the appointing authority seeking to have the Commission establish divisions or activities or classes of positions among bridge tenders in order to reflect these considerations. If this had been done, and due notice had been given to the various employees who were affected by such change, then, under Article 14, Section 15(1) (b) of the Constitution, the employees affected could have been afforded a reasonable opportunity to be heard, first by the Director and later by appeal to the Commission after filing with *689 the Director a written request for a hearing.
We believe the entire change requested by the Highway Department was for the sole purpose of getting around the original ruling of the Commission on the first hearing of these appellants. While it is true that the ruling affects all bridge tenders, an examination of the record herein indicates an intention on the part of the Department of Highways to force appellants back to the same position they were in at the time they filed their first appeal in April of 1967, all without notice or a hearing, and certainly in violation of the spirit of the entire Civil Service law.
While it could be argued that the strict procedural letter of the law was followed, it nevertheless cannot be said that the Civil Service Commission made any attempt to comply with the spirit of the Constitution or with Rule 11.1(b) of the Commission, to provide that such an exemption to the 40-hour work week must be established upon a class position or activity basis, when it accepted the classification submitted to it by the Department of Highways in its letter of January 23, 1968, which letter clearly shows that it is a self servicing document given to the Civil Service Commission by the Department of Highways rather than any attempt to comply with the Civil Service law. It has instead left the entire decision as to the work week of bridge tenders up to the discretion of the Highway Department rule, that is, by merely changing the number of bridge tenders assigned to a bridge it can change the work week. We feel that this ruling is in violation of the rights granted to the employees under the constitutional provisions of the Civil Service law.
In view of the fact that we have not felt that appellants’ position regarding the constitutionality of Rule 11.1(b) is tenable, it is not necessary to go into the question of the peremptive exception filed before this Court by the Department of Highways.
The argument by the Department of Highways that under Rule 11.1(b) the appointing authority may specify work weeks exceeding 40 hours for employees of a specific class without the necessity of the Commission passing upon this, is not valid in our opinion. Again, it is the opinion of this Court that it would be in violation of the requirements of Article 14, Section 15, of the Constitution. Furthermore, the Department of Highways felt it necessary to submit the new plan to the Civil Service Commission and the Civil Service Commission approved the plan, thus indicating that both the appointing authority and the Commission felt that it was necessary for this plan to be submitted to the Civil Service Commission.
For the above and foregoing reasons, the ruling of the Civil Service Commission is hereby set aside, annulled, vacated and voided, and the State of Louisiana, Department of Highways, is ordered to maintain appellants’ wages at the level based upon a 48 hour work week, together with all authorized and normal pay raises, and to pay all back overtime pay that may be due them under the ruling of this Court.
Reversed and rendered.