**James JACKSON, et al.**

v.

**The DEPARTMENT OF PUBLIC SAFETY FOR the STATE OF LOUISIANA, et al.**

**Civ. A. No. 83–3–A.**

United States District Court, M.D. Louisiana.

Dec. 27, 1985.

Dennis R. Whalen, Patrick F. McGrew, Baton Rouge, La., for plaintiffs.

Howard P. Elliott, Jr., Gen. Counsel, Dept. of Public Safety, Baton Rouge, La., for defendants.

JOHN V. PARKER, Chief Judge.

The matter which is presently before the court is defendants' motion for summary judgment, which plaintiff opposes. Oral arguments have been heard and extensive briefs and exhibits have been filed by both sides.

In an attempt to reconcile budgetary limitations with public safety and adequate compensation for state employees, Louisiana has elected to establish a scheme, part legislative, part administrative, which provides for compensatory time off for most overtime work. The federal constitutional sufficiency of the state scheme as applied to Louisiana state troopers is here challenged.[1]

This case involves the allegation of plaintiff, a Louisiana state trooper, that the Department of Public Safety, his employer, and the individual defendants, a former Secretary and Deputy Secretary of the Department, have deprived him of property under color of state law and without due process, in contravention of the Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction over the subject matter of this lawsuit is premised upon 28 U.S.C. § 1331, since the claim arises under 42 U.S.C. § 1983. Plaintiff alleges that his claim is made for himself, and a class consisting of all similarly situated Louisiana state troopers; however, he has so far been unsuccessful in his attempt to certify the class. The Department of Public Safety has been dismissed from the suit on the basis of the state's sovereign immunity under the Eleventh Amendment, leaving only the individual defendants. The motion for summary judgment claims that under the undisputed facts, defendants are entitled to a qualified immunity from suit as a matter of law. In the alternative, defendants allege the existence of adequate post-deprivation remedies which satisfy the requirements of due process. Finally, this court has noted sua sponte that any procedural due process inquiry must begin with the question of whether the plaintiff has a cognizable property interest at stake; therefore, this issue has also been briefed.

The court has carefully reviewed the exhibits submitted by the parties, the briefs, transcripts of oral arguments, and the applicable statutory and administrative material. The facts essential to the resolution of this motion are undisputed. The plaintiff is a Louisiana state trooper who is routinely required to work more than forty hours per week in order to perform his duties. He is compensated for this overtime work by "time and a half" payment or, after the modest annual appropriation for overtime payment is exhausted, by credit on the Department's records for compensatory time off at the rate of one hour off for each extra hour worked. At the end of each year, if he has accumulated

---

1. This action presents claims strictly under the federal Constitution. There is no claim regarding possible application to state troopers of the Fair Labor Standards Act, hence the recent decision of the Supreme Court in *Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) has not been considered.

more than 45 days (360 hours) of compensatory time on the books and has not taken this time off from work, any hours in excess of 360 hours are erased and are not carried forward into the next calendar year.[2] Plaintiff concedes that he is not arbitrarily singled out for this treatment; the Civil Service regulations which establish this procedure are uniformly and indiscriminately applied and have a similar effect on other state troopers [3] who accumulate compensatory time beyond the 360-hour cut-off point. The policy and its regular annual enforcement are known to plaintiff, and no specific notice or hearing takes place before the "excess" compensatory time is eliminated from the records of the Department. The eradication of accrued compensatory time in excess of 45 days is effected pursuant to Civil Service regulations which have the force of law.

There are a number of statutes and regulations which mandate and define compensatory time for Louisiana state troopers. La.R.S. 40:1373 provides:

The department shall arrange the work of the office of state police so that no employee shall be required to work more than five days per calendar week without being granted compensatory time off for the period worked in excess of five days.

The term "compensatory time off" is not defined, nor does the statute prescribe a measure of compensatory time off. The Legislature apparently elected to leave it to administrative authority, specifically the State Civil Service Commission,[4] to fill in the gaps in the legislative scheme. The Civil Service rules contain detailed provisions concerning the definition and computation of compensatory time. (These rules,

in 6.25(e), also provide for cash payment for overtime to ranks of sergeant and below under some circumstances, as does La. R.S. 32:733 for any state trooper; these provisions are not at issue in this lawsuit). Civil Service Rule 6.24 defines an overtime hour and Rule 6.25 describes and defines the various types of compensation which are available for overtime work, as well as how the compensation is to be computed. With reference to compensatory time, Rule 6.25 states:

(a) In addition to the regular salary and subject to other provisions in these rules, compensation for overtime hours shall be computed and given in the following manner:

(3) Compensatory time shall be credited at the rate of one hour of compensatory time for each overtime hour worked.

Rule 6.25 further provides, in sub-paragraph (d), that the appointing authority has discretion in crediting compensatory time equal to the number of hours which an employee is required to work overtime, subject to the definitions and limitations contained in certain other provisions in the rules.

Various types of leave, including annual leave, sick leave, and compensatory time off work, are defined with particularity in chapter eleven of the Civil Service rules. Compensatory time is covered by Rule 11:29(a) through (g). Rule 11.29(a) basically reiterates the discretionary nature of the compensatory time credit, stating:

... employees who are required to perform overtime duty may, at the option of the appointing authority, be credited with

---

2. The defendant Bollinger, as Secretary, instituted a policy of directing supervisors to regularly review accumulated "K-time" and require that officers take the time off before losing it. Obviously this is not always possible, considering the needs of the service. The defendant Garrison as head of the State Police requested that the Civil Service Commission modify the regulations as they apply to state troopers. The Commission denied the request.

3. As well as other state employees.

4. The Civil Service Commission is created and granted authority over the classified service, in-

cluding state troopers, by Article 10, Section 2(A) and (B) of the Louisiana Constitution of 1974. The Commission is granted "general rule-making ... power for the administration and regulation of the classified service," Art. 10, Sec. 10(A)(1), although any rule affecting wages or hours shall have the effect of law only after approval of the Governor. Art. 10, Sec. 10(C). Since both sides cite and rely upon the rules which have been filed in the record, we assume gubernatorial approval, although no evidence of such has been presented.

compensatory leave equal to the number of extra hours he has been required to work.

Compensatory time is limited by Rule 11.29 in a number of ways. Subparagraph (b) eliminates this option for employees serving on an intermittent basis, and sub-paragraph (e) describes certain situations of an extraordinary or emergency nature in which compensatory time is inapplicable for overtime work. In sub-paragraph (c), an employee is given the opportunity to use his compensatory time in the future, subject to the approval of his appointing authority, but sub-paragraph (d) gives the appointing authority the right to insist that the employee take all or a part of his leave at any time. Finally, the conditional nature of compensatory time is emphasized by two additional provisions. Rule 11.29(e) states that all compensatory leave credited to an employee shall be cancelled upon his separation from the department in which he earned it, with no possibility of having those credits reinstated and Rule 11.29(f), which is the clause at issue in this lawsuit, states that:

> Not more than forty-five (45) working days, or the equivalent thereof in hours, of accrued unused compensatory leave shall be carried forward into any calendar year.

Although inelegantly phrased, the Civil Service rules follow a pattern which moves from the general to the specific. First the concept of overtime is defined (Rule 6.24). Then the three types of payment available for overtime work (time and one-half, straight time, and compensatory time) are defined and the method of computing each is described. [Rule 6.25(a)] The remaining sub-paragraphs of Rule 6.25 discuss the eligibility criteria for each type of overtime compensation and the differential treatment of employees according to grade level. Finally, the compensatory time provisions in chapter eleven delineate the times, circumstances, and conditions under which compensatory leave can be taken by the employee, as well as the conditions under which it will be lost.

It is the existence of a condition under which accrued compensatory time is lost which is at the heart of this litigation. Plaintiff contends that the yearly erasure of accrued compensatory time beyond 45 days is a taking of property without due process of law. He reasons that the compensatory time is payment for overtime work and that the credit on the Department's records is a recognition that he has earned this time off and is therefore entitled to receive it. Although he is aware of the potential removal of the excess compensatory time if he does not take it within the year it is earned, the nature of his work is such that he is often unable to take the time off and thus it accumulates beyond the 45-day cut-off point and is taken away from him at the end of the year. Since there is no predeprivation hearing, plaintiff argues that the taking of his "earned compensation" is accomplished without due process of law. And he asserts that the appeal provisions available to him in the Civil Service rules are constitutionally inadequate because in his case the rules are being consistently applied precisely as written, and the appeal process is directed toward situations in which the rules are ignored or are enforced in a discriminatory or arbitrary manner. Thus plaintiff contends there is no adequate post-deprivation hearing.

Despite repeated invitation to do so, plaintiff has been unable to spell out what *procedural* remedy would be appropriate here. An administrative hearing, as suggested by counsel, before the end of the calendar year and striking of the excess hours, would avail nothing. The Secretary and Deputy Secretary must provide for adequate staffing to protect the public and they could not fail to comply with the Civil Service rules which mandate the striking. No facts which could be established at such a hearing could change the result one whit. Plaintiff does not claim arbitrary administration of the system because it is the system itself which dictates the result. Although counsel has not admitted it, procedural due process is actually not at issue here—there is no procedure that the defendants could accord plaintiff that would

prevent loss of the excess hours. Thus plaintiff's claim is actually a substantive due process claim. If plaintiff has any claim it is that the system (process) established by the state deprives him of his property (accumulated compensatory time off) without just compensation in violation of the Fifth Amendment, which presumptively is made applicable to the states by the Fourteenth Amendment. If indeed the state's process constitutes a confiscation of plaintiff's non-contraband property, there is no procedural avenue which the state can provide which would validate the taking, for it is the taking itself which is forbidden by the Constitution. Because of the ultimate conclusion that plaintiff's compensatory time off is not "property" under the facts of this case, these issues are not reached. However, the substantive due process analysis of an economic issue has traditionally involved scrutiny under the "rational relationship" test, and the state's rationale in striking a balance between budget restrictions, compensation for its police force, and the requirements of public safety has already been suggested.

The leading cases discussing the circumstances under which constitutionally protected property interests are created by state law are *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and its companion case, *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The Supreme Court in *Roth* stated succinctly that;

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it ... Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth, supra,* 92 S.Ct. at 2709. In *Perry,* the court further noted that:

> ... 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' ... A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. (citations omitted)

*Perry, supra,* 92 S.Ct. at 2699. The essence of "property" in the constitutional sense is an individual entitlement grounded in state law. Further, the entitlement must be one which cannot be removed except for cause. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982).

Under the above precepts, a wide range of interests have been found to be "property," that is, individual entitlements granted by state law which cannot be removed except for cause. Included among these are a horse trainer's license, *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); utility service, *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); disability benefits, *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); a high school education, *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); a driver's license, *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); welfare benefits, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); and a cause of action, *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In *Jago v. Van Curen,* 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981), a case analyzing the property and liberty aspects of state parole provisions, the court further explained the correct standards for evaluation of the individual interest at stake. Citing *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the *Jago* decision noted that the court had previously rejected the idea that *any* grievous loss visited upon a person by the state is suffi-

cient to invoke the procedural protections of the Due Process Clause. The question involves more than the weight or subjective importance of the individual's interest. The nature of the inquiry turns on the nature of the relationship between the individual and the state and the protected or unprotected status of the interest claimed by the individual vis-a-vis the state. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the court reiterates this concept, stating:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*Paul, supra,* 96 S.Ct. at 1165. Not every interest accorded by state law is a "property" interest within the meaning of the Fourteenth Amendment. *Endicott v. Huddleston,* 644 F.2d 1208 (7th Cir.1980). When the diversity of interests which have been found constitutionally protected "property" are compared to those interests which are not afforded this protection, it becomes clear that the type of interest does not, in and of itself, define "property" in the constitutional sense, although the importance of the interest to the individual is a factor to be considered. One person's interest in continued employment as a university professor is not "property" (*Roth, supra*), while another's identical interest may be "property." (*Perry, supra*). The focus is on the *protection* of the particular interest in state laws, rules, or mutually explicit understandings, such that the individual's *entitlement* to the benefit is clearly understood and established. The cases are consistent in holding that, absent an entitlement to certain benefits, the plaintiff's unilateral expectation falls short of a property right. Not every interest accord-

ed by state law is a "property" interest within the meaning of the Fourteenth Amendment. *Endicott v. Huddleston,* 644 F.2d 1208 (7th Cir.1980).

Of all the cases in which "property" under the Fourteenth Amendment is discussed, the facts of this case most closely resemble those in *Brown v. Brienen,* 722 F.2d 360 (7th Cir.1983). The plaintiffs in that case were county employees under the supervision of the sheriff. A county ordinance provided that compensatory time, equal in amount to hours worked over a certain limit, may be granted, and the sheriff had promised to comply with the ordinance. However, as the sheriff's workload increased and the county board failed to appropriate more money to hire additional employees, the compensatory time accrued faster than the sheriff could allow it to be taken without endangering public safety, and a large backlog accrued. The suit claimed that the property right of the plaintiffs in accrued compensatory time was being taken from them without due process of law by the sheriff's refusal to allow them to take their time off and by the Board's refusal to properly fund the department. The district court agreed that a deprivation of property had occurred, but found that plaintiffs had not been denied due process, because they had state remedies available. The Seventh Circuit did not pass upon the deprivation of a property interest since that issue was not appealed, but obviously felt strongly that the interest was *not* one to which constitutional protection should be applied. The court several times expressed its doubt that the compensatory time was "property" in the Fourteenth Amendment sense, and commented:

> But the Constitution must not be trivialized by being dragged into every personnel dispute in state and local government. Disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment.

*Brown, supra,* at 365. We note that the protection given to the compensatory time in *Brown* was greater than that provided by the Louisiana regulatory scheme which

governs the matter before the court. Therefore, if the overtime compensation in *Brown* was of such doubtful status as "property" in the constitutional sense, the claim of plaintiff in the instant case is even more doubtful.

Applying these legal principles to the undisputed facts in this matter, the court must conclude that the plaintiff has not demonstrated a constitutionally protected interest in this instance. Looking at the entirety of the statutes and regulations governing the overtime compensation for Louisiana state troopers, it is clear that the "mutually explicit understandings" between the plaintiff and his employer include the condition whereby compensatory leave cannot be indefinitely accumulated by the employee. The plaintiff's expectation under the Civil Service rules must be that if he accumulates over 360 hours of overtime during a given year, he must take that time off or lose it. He cannot carry the excess compensatory time forward from year to year and continue to accumulate it. In this respect, his entitlement to the compensatory time off is a limited one, limited by the very rules which define the nature of the benefit. Plaintiff in this case has no legitimate expectation that he can retain any compensatory time which he accumulates beyond the 45-day limit. The limitation is clear, constant, ascertainable in advance of employment, and is not applied in a discriminatory manner to divest plaintiff of rights which other similarly situated individuals enjoy. Clearly the situation presents a Hobson's choice to everyone in the Department of Public Safety: There is no choice but to furnish sufficient manpower to protect the public, which means the plaintiff (and others) will inevitably work overtime and accumulate compensatory time off which he will be unable to use because of the needs of the service some of which will ultimately go uncompensated because there is no choice but to comply with Civil Service rules. However, as noted above, the weight of the plaintiff's interest is not the telling factor in determining the

existence of "property" in the constitutional sense. It is the protection given to that interest by state law which is determinative. The state has clearly established a procedure whereby, in certain instances, it can compensate plaintiff for only a portion of the extra hours which he works. While this situation is unfortunate, it is not unconstitutional.[5]

Although plaintiff argues to the contrary, the court's conclusion that plaintiff's interest in unlimited accrual of compensatory time is not "property" is not in conflict with the previous unpublished decision in *Parrish v. City of Baton Rouge*, CA No. 80–170 (June 30, 1982), where this court found that plaintiff's interest in his accrued compensatory time was a protected property interest. In that case, there were no regulatory or implied limitations upon the accrual of compensatory time. Instead, there was a practice of maintaining an employee on the books after his resignation for a period of time equal to that accrued compensatory time, during which period he received his regular pay. This generally followed practice was arbitrarily enforced to deny plaintiff Parrish his accumulated compensatory time. The interest was "property" in the constitutional sense precisely because of the practice which had become a part of the "mutually explicit understandings" between the plaintiff and his employer. This contrasts with the instant case, in which the "understandings" include a specific limitation on the accrual of compensatory time. The contrast between the two cases further exemplifies the fact that the same type of interest may be constitutionally protected in one situation and not in another.

Plaintiff has argued that the legislature is given final authority over wages for state policemen by virtue of Article 10, Section 10 of the Louisiana Constitution. From this, he contends that the legislation which mandates compensatory time for any period worked in excess of five (5) days, La.R.S. 40:1373, takes precedence over the

---

5. Plaintiff concedes, as he must, that the federal Constitution does not mandate hours, wages or

conditions of employment for state employees.

Civil Service rules and establishes plaintiff's entitlement. He concludes that therefore the alteration of this entitlement by the rules is unconstitutional.

This argument has two major weaknesses. First, Article 10 of the 1974 Constitution gives the Civil Service Commission the exclusive responsibility for fixing hours and wages for state employees. The only exception to the broad rule-making power of the Commission is the reservation to the Legislature of power to enact laws "supplementing these uniform pay plans for sworn, commissioned law enforcement officers of the Division of State Police, Department of Public Safety." *La. Const.*, Art. 10 § 10 (1974). The wording of La.R.S. 40:1373 does not clearly manifest a legislative intent to "supplement" the uniform pay plan established by the Civil Service Commission. Rather, it sets out in general terms a five-day work week with an undefined length of a "day" and an undefined "compensatory time off" for hours worked beyond that five-day week.

It is the Civil Service rules which define the "day" of work, the "overtime" work, and the "compensatory time off" work to which reference is made in the statute. Thus the rules are not in conflict with the legislative provision, but are an elaboration and particularization of those provisions.

The second weakness of plaintiff's argument is that, even if we were to accept plaintiff's contention that Rule 6.25(f) is in conflict with the legislative intent of La. R.S. 40:1373, we are not at all convinced that the rule must give way to the legislation in this instance. Plaintiff has not provided this court (nor has our independent research revealed) any Louisiana case which interprets the "supplemental pay" reservation of Article 10 § 10 in such a way that it clearly applies to the compensatory time provisions which are at issue in this lawsuit. And in reviewing the Louisiana jurisprudence which has addressed similar conflicts between the Constitutions of 1921 or 1974 and the Civil Service rules, the weight of authority appears to support resolution in favor of the Civil Service rules. *See Barnett v. Develle*, 289 So.2d

129 (La.1974); *La. Civil Service League v. Forbes*, 258 La. 390, 246 So.2d 800 (1971); *Meaux v. Dept. of Hwys.*, 228 So.2d 680 (La.App.1969), *writ refused*, 255 La. 288, 230 So.2d 590 (1970); c.f. *N.O. Firefighters Ass'n v. Civil Service Commission of City of N.O.*, 422 So.2d 402 (La.1982). Thus, while we do not interpret these provisions of the rules as conflicting with the Louisiana Constitution, and therefore do not presume to decide this question of Louisiana law, we do note that the Louisiana jurisprudence on this issue is generally not supportive of plaintiff's argument. In conclusion, plaintiff has no "entitlement" to the unlimited and indefinite accrual of compensatory time, based upon the state laws, regulations, and understandings which indisputably establish his right to *some* degree of compensatory time.

Since we find that plaintiff has not established a "property" right, there is no need to inquire into the method by which the compensatory time is eradicated, because procedural protections are due only for constitutionally protected interests. Nor do we address the issue of defendants' qualified immunity, other than to note that we find that there has been no violation of law, established or otherwise, by any defendant. Accordingly, defendant's motion for summary judgment is GRANTED and there will be judgment in favor of defendants.