Dear Gentlemen:
You have requested an opinion from this office concerning annual/vacation leave for twelve month employees of the Avoyelles Parish School Board regardless of job title. Specifically, the questions which the Avoyelles Parish School Board has posed to this office are as follows:
1.) Does the School Board's current policy recognize accrued annual/vacation leave from January 1, 1974 to date under Executive Order 56?
2.) Does the School Board's current policy recognize accrued annual/vacation leave from August 15, 1997 to date under Act 56 (of the 1997 Regular Session)?
3.) Does the School Board have to pay for accrued annual/vacation leave from January 1, 1974 to date under Executive Order 56?
4.) Does the School Board have to pay for accrued annual/vacation leave from August 15, 1997 to date under Act 56 (of the 1997 Regular Session)?
5.) Are the options in the proposed new annual/vacation policy appropriate?
6.) If annual/vacation leave is not recognized as being accrued, at which date do we begin to accrue annual/vacation leave for which compensation must be paid as described in La. R. S. 23:631 as amended?
7.) If a person who retired after August 15, 1997 requests payment for his/her unused annual/vacation leave, what are we supposed to do in fulfilling that request?
8.) In the current policy, does page 3 entitled "Annual/Leave Compensation" have to be honored for those affect employees between August 18, 1981 to date?
You have provided me with a history of the Avoyelles Parish School Board's policies regarding leave for twelve month employees by means of both personal meetings and via documentation.
For the period between January 1, 1974 (which is the date former Governor Edwards signed Executive Order No. 56) and February 21, 1978, you have not been able to provide us with the Board's policy regarding the accrual vel non of annual leave for twelve month employees. We are unable to provide you with an opinion for this time period; however, the Board is obligated to comply with the mutual understandings, terms of employment, and policy in force at that time.
On February 21, 1978, the Avoyelles Parish School Board adopted Executive Order 56. This Executive Order provides in Section 3.1, "Accrued unused annual leave earned by an employee shall be carried forward to the succeeding calendar years without limitation." Contemporaneously with the adoption of Executive Order 56, the school board adopted a policy which states, "Annual leave must be taken within the calendar year and cannot be carried over to the next year. It shall be applied for by the employee and may be used only when approved by the superintendent."
In Jackson vs. Dept. of Public Safety for the State of Louisiana,675 F. Supp. 1025, 1028 (M.D. La. 1985), Civil Service Rule 11.29(f) provided that not more than forty-five days of accrued, unused compensatory time could be carried forward into any calendar year. The State Trooper employee was aware of the foregoing Rule but argued that he was being deprived of his property without just compensation (at p. 1029). In the ruling against Jackson, the Court found that the plaintiff had no legitimate expectation that he could retain any compensatory time beyond the forty-five day limit (at p. 1031). Thus, when the limitation is clear, constant, ascertainable in advance of employment, and not applied in a discriminatory manner towards an individual, such a restriction is reasonable. (Id.)
Subsequently, on August 18, 1981, the school board agreed to amend the Annual Leave Policy to read as follows: "Unused annual leave for a full-time twelve month employee in a non-teaching position shall be compensated. Such compensation shall be figured on the basis of two days of wages at the employee's regular salary for every three days of annual leave which the employee does not use."
In April of 1998, the school board became aware of Act 56, which amends La. R. S. 23:631. The amendment, which is set forth in its entirety below, provides that when an employee earns vacation time for which he has not been compensated and which he has not taken, the vacation pay shall be considered an amount due to the employee upon termination of the employment relationship.
By Act 56 of the 1997 Regular Session, the Legislature amended La. R. S. 23:631, which is commonly referred to as the "wage statute" by adding the following:
 A.(1)(c)(i) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
 (aa) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
 (bb) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
 (ii) The provisions of this Paragraph shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.
Each city or parish school board is given authority to enact rules and regulations pertaining to the administration of its own system, provided such rules and regulations are not inconsistent with the law or with the regulations of the State Board of Elementary and Secondary Education. La. R. S. 17:81C. Such rules and regulations are often called "polices" by school boards. See, for example, Baudoin vs. Vermilion Parish School Board,692 So.2d 1316, 1317 (La.App. 3rd Cir. 1997), in which the Court discussed the defendant school board's annual leave policy.
Title 17 of the Revised Statutes contains various leave provisions which are applicable to teachers. For example, La. R. S. 17:425 provides for payment of accrued sick leave of up to 25 days upon the teacher's retirement; R. S. 17:1201 covers sick leave for teachers; R. S. 17:1208 provides two personal leave days for teachers; R. S. 17:1171 provides for sabbatical leave for teachers; and R. S. 17:1186 provides for leave without pay for teachers.
When an employer agrees to pay employees for unused vacation time, accrued, but unused annual leave qualifies as "wages."Beard vs. Summit Institute, 97-C-1784 (La. 1998); 707 So.2d 1233,1235. Benefits such as paid vacation are vested in the employee as a form of additional deferred compensation . . . so that a terminated employee who has accrued vacation time is entitled to her wages for that time. Knecht vs. Board of Trustees for StateColleges, 91-C-0751 (La. 1991); 591 So.2d 690, 695.
When an employer allows an employee to accumulate annual leave, the employer cannot change its policy with the result that the employee must forfeit his previously accumulated leave. Baudoin,supra, at 1317.
1.) Does the School Board's current policy recognize accrued annual/vacation leave from January 1, 1974 to date order under Executive Order 56?
Concerning the period from January 1, 1974 and February 21, 1978, please see the previous discussion found on page 2.
Executive Order 56's Section 3.1 directly conflicts with the Annual Leave Policy adopted on the same date. In our opinion, the school board intended to amend Executive Order 56's Section 3.1 by adopting the specific conflicting annual leave policy, which provided that annual leave could not be carried forward to the next year. Therefore, from the date of adoption of Executive Order 56, February 21, 1978, an employee was barred from carrying forward any annual/vacation leave. Thus, from the aforementioned date (February 21, 1978) to August 18, 1981, the Avoyelles Parish School Board is not obligated to pay for any accrued annual/vacation leave earned but unused by an employee during that time period.
According to the minutes of the August 18, 1981 Avoyelles Parish School Board meeting, "The Board also agreed to amend the annual leave policy to read as follows: `Unused annual leave for a full-time twelve month employee in a non-teaching position shall be compensated. Such compensation shall be figured on the basis of two days of wages at the employee's regular salary for every three days of annual leave which the employee does not use.'"
Therefore, under the Board's amended policy of August 18, 1981, which is the Board's current policy, the Board changed its policy regarding accrued annual leave to provide that unused annual leave shall be figured on the basis of two days of wages for every three days of leave which the employee did not use.
2.) Does the School Board's current policy recognize accrued annual/vacation leave from August 15, 1997 to date under Act 56 (1997 Regular Session)?
As previously stated, the Board's current policy recognizes accrued annual leave from August 18, 1981 to date. Act 56 of the 1997 Regular Session has had no impact upon the Board's current policy of recognizing compensation for accrued annual/vacation leave.
3.) Does the School Board have to pay for accrued annual/vacation leave from January 1, 1974 to date under Executive Order 56?
For the period January 1, 1974 to February 21, 1978, please see the discussion found on page 2. From February 21, 1978 until August 18, 1981, an employee was barred from carrying forward any annual leave. On August 18, 1981, the computation of compensation would be figured on the basis of two days of wages for every three days of annual leave which the employee did not use.
4.) Does the School Board have to pay for accrued annual/vacation leave from August 15, 1997 to date under Act 56 (1997 Regular Session)?
As aforementioned, even without the passage of Act 56 of the 1997 Regular Session, the School Board has been obligated to pay for accrued annual/vacation leave since August 18, 1981. Therefore, it is not necessary for us to reach the issue of whether or not the Board is obligated under Act 56. However, we wish to point out that in Baudoin vs. Vermilion Parish School Board, supra, the Court applied La. R. S. 23:631, et seq., to twelve month school board employees.
5.) Are the options in the proposed new annual/vacation policy appropriate?
In your proposed new policy for personal leave, absences and annual leave, the Board proposes to adopt the provisions for annual leave in accordance with Executive Order 56 of January 1, 1974. However, the Board's proposed policy conflicts with Executive Order 56 inasmuch as Executive Order 56 has a different rate of earning annual leave based on the number of years of service; and, more importantly, Executive Order 56 provides that accrued annual leave shall be carried forward without limitation. The Board's proposed policy provides that the maximum number of annual leave days shall be 20. Therefore, this conflict should be resolved by the Board prior to adopting either the proposed policy or Executive Order 56. Executive Order 56 was signed some 24 years ago and was designated as the regulations for leave for all employees in the state except the Civil Service employees, department heads appointed by the Governor, and elected officials. Therefore, Executive Order 56 applied to a small group of state employees who were serving in the unclassified service at the pleasure of an agency or department. Because of the type of employees to whom Executive Order 56 applied, it was never intended to be applicable to School Board employees. Additionally, more recent Executive Orders exist which your Board may wish to review.
Regarding the options in your proposed new policy, Option No. 1 reads, "Employee can be paid his daily rate of pay for all unused annual leave." This option conflicts with paragraph 4 on page 2 of your proposed new policy inasmuch as paragraph 4 provides that the maximum number of accrued annual leave days is twenty. Therefore, the Board should resolve this conflict. Option No. 2 is within the guidelines of the Teacher's Retirement System and School Employees Retirement System. However, add the following: 1) the annual leave must be purchased at the actuarial cost, and 2) in regard to Option No. 2, the Teacher's Retirement System requires that for accrued annual leave to be purchased, an employee's attendance record must have been maintained by the employer.
6.) If annual leave is not recognized as being accrued, at which date do we begin to accrue annual/vacation leave for which compensation must be paid as described in La. R. S. 23:631 as amended?
This question does not require an answer since previous answers have determined that annual or vacation leave has been accruing since August 18, 1981 when the Board amended the policy to provide for compensation of annual leave at the rate of 2 days for every 3 days of unused leave.
However, we wish to point out that a claim for accrued annual leave or for vacation leave is subject to a three-year prescriptive period. See, for example, Montivelle v. City ofWestwego, 91-C-1580 (La. 1992); 592 So.2d 390.
7.) If a person who retired after August 15, 1997 requests payment for his/her unused annual/vacation leave, what are we supposed to do in fulfilling that request?
The Board should figure the annual leave in accordance with the policy which was in effect during the employee's employment. For example, if the employee had been employed on some date after August 18, 1981, the employee should be compensated at the rate of 2 days of wages for every 3 days of annual leave which the employee had not used. If, however, the employee had been in service since February 21, 1978 to date, his accrual of annual leave from February 21, 1978 until August 18, 1981 was barred.
As previously mentioned, the three-year prescriptive period of Civil Code Article 3494 is applicable to claims made for past due wages, which includes vacation pay. Beard, supra.
8.) In the current policy, does page 3 entitled "Annual/Leave Compensation" have to be honored for those affected employees between August 18, 1981 to date?
This question has been previously answered in the affirmative.
In conclusion, under the Avoyelles Parish Board's policy in effect at the time of accrual, the School Board is obligated to pay accrued annual/vacation leave for twelve month employees regardless of job title.
We hope that this opinion has sufficiently addressed your inquiries. If we may be of further assistance, do not hesitate to contact this office.
With best regards,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ VIRGINIA A. ANTHONY Assistant Attorney General
RPI/VAA:lrs